John Doe, *ex dem.*, William Henderson, plaintiff in error, *vs.* Richard Roe, *cas. ejector*, and William P. Hackney, and others, defendants in error.

[1.] In ejectment, the plaintiff showed a grant to *Elias* Nicks, and a deed from *Eli* Nicks, and introduced parol evidence tending to show, that the *Elias* Nicks of the grant, and the *Eli* Nicks of the deed, were one and the same person.

*Held,* That this was legal evidence.

[2.] After the draw and before the grant, the equitable title is in the drawer, and the legal title is in the State for the use of the drawer on his payment of the grant fee. This equitable title is transferable ; when transferred, the legal title in the State, becomes a legal title for the use of the *transferree* on the payment of the grant fee. Consequently, on the issuing of the grant to the drawer, the legal title passes through him without stop, into the transferree, by virtue of the statute of uses.

Ejectment, in Whitfield Superior Court.    Tried before Judge Brown, at October Term, 1857.

This was an action of ejectment brought by John Doe, *ex dem.* of William Henderson, against Richard Roe, *casual ejector*, and William P. Hackney, Frederic Thompson, and James Morris, and others, tenants in possession, for recovery of lot of land No. 218, in the 12th district, and 3d section, of the county of Murray, and for mesne profits.

The defendant pleaded the general issue.

Upon the trial, plaintiff read in evidence to the jury, a grant from the State, (produced by defendant under notice,) to *Elias Nicks*, dated 10th May, 1841 ; a deed from *Eli Nicks* to plaintiff, Henderson, dated 5th August, 1839, and recorded 23d January, 1840.

Defendants offered and read in evidence, a deed from *Elias Nicks* to Absalom Holcombe, dated 19th May, 1841. Then a deed from William J. Underwood, Sheriff, conveying said lot, sold at Sheriff's sale, as the property of Holcombe, to James Edmundson, dated 31 January, 1844. Then a deed from Edmundson to Samuel R. McCanny, dated 23d of August, 1844, and a deed from McCanny to James Morris, dated 28th January, 1846.

The grant from the State, and all the deeds offered in evidence, were for the same lot of land—the lot in controversy.

The parol testimony was, that in the spring of 1846, William Henderson came to the lot in dispute, and commenced the erection of a log cabin ; worked one or two days, and got the cabin about five logs high. On the morning of the third day, Henderson went to the place where he was building, and found James Morris in possession, inside of the cabin ; some eight or ten men were with Morris ; Samuel R. McCanny, William J. Underwood, two of the Thompsons, and others, were there ; Morris said he would not give up the possession ; something was said by Morris about comparing titles ; a large quantity of timber had been cut and hauled off

the premises, and from a brick-yard on the lot, about 400,000 bricks had been made and carried off. The lot, it seems, was situated near Dalton.

A great many witnesses were examined, as to the identity of Elias Nicks and Eli Nicks, and whether the name and person were the same, and referred to the same individual.

It appeared that a man by the name of *Eli Nicks* once lived in Walden's district, Pulaski County; that he lived in that county at the time of the entries made for drawing in the gold and land lotteries in Cherokee, Georgia; that he moved to Decatur county some fifteen or twenty years ago; and that he claimed to have a lot of land in Cherokee; that this man's name was Eli Nicks; always signed his name *Eli Nicks.*

*J. M. Patton,* Secretary of the Executive Department, certified, that he had examined the list of names of the persons entitled to draw in the late gold and land lotteries in Cherokee, as returned to that office from the county of Pulaski; and that he found the name of Elias Nicks, head of family, of Walden's district, of said county; he also found the name of Miles Nix, of McDaniel's district, in said county, entered for a draw in the gold lottery; and the name of Miles Nicks, of McDaniel's district, entered for one draw in the *land* lottery; and that these are all and the only persons by the name of Nicks, entered on said list, as entitled to draw in said lottery.

The case, under the charge of the Court, was submitted to the jury, who found for the plaintiff the premises in dispute, and one thousand dollars for mesne profits.

Defendant moved for a new trial on the following grounds:

1st. Because the Court refused to charge the jury, as requested by defendants counsel, that the plaintiff cannot recover by showing that the grant issued by mistake to a wrong name, but charged the jury that the plaintiff cannot recover by showing that the grant issued by mistake to a wrong person; but if they believe from the evidence,

that the Eli Nicks of plaintiff's deed, and the Elias Nicks of the grant, were one and the same person, then the plaintiff could recover.

2d. Because the Court refused to charge the jury, that the plaintiff cannot recover in this case, unless he shows by evidence, to the satisfaction of the jury, that Eli and Elias Nicks were one and the same person, and was called and known as well by the one name as the other; but charged that the plaintiff cannot recover unless the evidence satisfied the jury, that the Eli Nicks of plaintiff's deed, and the Elias Nicks of the grant, were one and the same person; and if he was known by one name as well as the other, it was a strong circumstance of identity.

3d. Because the Court refused to charge the jury, that the plaintiff cannot recover in this case, by showing that the grant to Elias Nicks was intended for Eli Nicks, and thereby substitute a different name for the grantee, to that specified in the grant; but charged that the plaintiff could recover, if the jury were satisfied, from the evidence, of the identity of Eli Nicks of the plaintiff's deed, and the Elias Nicks of the grant.

4th. Because the Court refused to charge the jury, as requested, that if the evidence should satisfy the jury that Eli Nicks and Elias Nicks are one and the same person, and was called and known as well by one name as the other; yet, if Henderson purchased the land from Nicks before the grant issued, and Holcombe purchased after the grant issued, then Holcombe's deed is the better one, and the jury must find for the defendants.

5. Because the Court charged the jury, that if the deed to Henderson, and the deed to Holcombe, were made by the same person, and the grant had issued, or the grant fee paid by the grantee, after Henderson's deed was made, but before the deed to Holcombe was made, the payment of the grant fee, or the issuing of the grant, vested the legal title in the

grantee, and it inured to the benefit of Henderson, and his is the better title.

6th. Because the verdict is against the law and evidence, as to title.

The Court granted a new trial, and plaintiff excepted.

J. R. & T. W. ALEXANDER, and W. H. DABNEY, for plaintiff in error. .

UNDERWOOD; and AKIN, for defendants in error.

*By the Court.*—BENNING, J. delivering the opinion.

Was the Court below right in granting the motion for a new trial? This is the only question.

If any one of the grounds of the motion was sufficient, the Court *was* right in granting the motion.

I proceed, then, to notice those grounds, in their order

The first ground was this: "The Court refused to charge the jury, as requested, by defendant's counsel, that the plaintiff cannot recover by showing, that the grant issued, by mistake, to a wrong name; but charged the jury, that the plaintiff cannot recover by showing, that the grant issued, by mistake, to a wrong·person; but, if they believe from the evidence, that the Eli Nicks of plaintiff's deed, and the Elias Nicks of the grant, were one and the same person, then the plaintiff could recover."

What the Court did, according to this ground, amounted to telling the jury, that if there was a person named *Eli* Nicks, and not named *Elias* Nicks, and if the grant was made to that person, but, by mistake, was made to him in the name, *Elias* Nicks, instead of, being made to him in the name, *Eli* Nicks, and he made the deed to Henderson, then, the plaintiff was entitled to recover; but, that if there was one person named *Eli* Nicks, and another person named *Elias* Nicks, and the one of these two persons entitled to the grant, was the one named *Eli* Nicks, and yet, that, by mis-

take, the grant was made, not to him, but to the person named *Elias* Nicks, then, that the plaintiff was not entitled to recover. The exception, of course, is to the first part of this—the part which gives the plaintiff a chance to recover.

The evidence was such, that it tended to show, that there was a person known to his neighbors as *Eli* Nicks, and not known to them as *Elias* Nicks; and, to show, that that person was the person to whom the grant was made, although it was made to him, as *Elias* Nicks; and also, to show, that that person was the person who, in the name, *Eli* Nicks, made the deed to Henderson. And there was no evidence tending to show, that there was one person named *Eli* Nicks, and another named *Elias* Nicks, except the evidence furnished by the fact, that the grant, and the deed to Holcombe, used the name *Elias* Nicks.

Now the objection to this part of the charge, if I understood the argument for the defendant in error aright, was, that it was founded upon that portion of this evidence which tended to show that the person called in the grant, *Elias* Nicks, and the person called in the deed, *Eli* Nicks, were one and the same person; and that that portion of the evidence was illegal.

Assuming that to be the objection, the question is, was that portion of the evidence illegal?

This Court has once decided that it was not. *Doe ex dem. Henderson vs. Roe and Hackney*, 16 *Ga.* 524–5.

But, it was insisted, that there were two other decisions of this Court, according to which, the evidence was illegal. These were *Tison and others vs. Yawn*, 15 *Ga. R.* 495, and *Sykes vs. McRory*, 10 *Ga.* 470.

And I must say for myself, that in my opinion, the evidence *was* illegal if tried by these two decisions; but I must also say, that, in my opinion, the two decisions were wrong.

The later of these two decisions, is founded exclusively upon the earlier; it takes no notice of an intermediate decision,

which, I think, is contrary to the earlier; I mean the decision in *Greene vs. Barnwell et al.,* 11 *Ga.* 284.

These two decisions, as I think, are not only contrary to that intermediate decision, and to the decision made in this same case, when it was up before, *(supra)* a decision later than either of these two, but they are, as I think, contrary to a perfectly established rule of law—the rule which says, that parol evidence may be used to *identify* person or thing, mentioned in a written instrument. This is a rule which, so far as I know, is without exception. And, it is a rule the object of which, is, not to pervert written instruments, but to prevent written instruments from being perverted.

These two decisions, then, are, in my opinion, to be utterly disregarded.

[1.] This Court, in respect to the present question, repeats its former decisions, and holds, that the part of the evidence under consideration, was not illegal.

The next two grounds of the motion, are so nearly the same as the first, the one just considered, that they must share its fate.

The next two grounds of the motion, the fourth and the fifth, amount to this : that the Court told the jury the opposite of what it was requested to tell them; viz: told them, that if the deed to Henderson, and the deed to Holcombe, were made by one and the same person, and the grant had issued, or the grant fee been paid by the grantee, after the making of the deed to Henderson, but before the making of the deed to Holcombe, the payment of the grant fee, or the issuing of the grant, vested the legal title in the grantee, and that title inured to the benefit of Henderson, and his was the better title.

This is a charge that was to have effect, on the hypothesis, that there has been but one Nicks; that he was the drawer of the lot of land; and consequently, that he was the person entitled to a grant for the land, on payment of the grant fees. Let us assume this to be the true hypothesis.

27

In that case, what was the interest which Nicks had in the land, after he drew it, and before it was granted to him? It was the equitable interest in the land. And where was the rest of the interest in the land—the legal interest? The State had it. And this legal interest, the State held, as security for the payment of the grant fee. *Winter vs. Jones,* 10 *Ga.,* 202, 205, 12 *Ga.* 340. The State thus holding the legal interest for that purpose, the statute of uses did not operate upon that interest, and merge it in the equitable interest.

I must remark for myself, however, that I extremely doubt whether the drawer of a lot in any of our land lotteries, is not vested with the whole interest, both legal and equitable, in the lot, subject to be divested on his failure to pay the grant fees. The Constitution has in it these words: "And this Convention doth further declare and assert, that all the territory within the presen' temporary line, and within the limits aforesaid, is now of right the property of the free citizens of this State, and held by them in sovereignty inalienable except by their consent." *Art.* II, *Sec.* 23. What is our lottery system but a mode of *partition* of this "*property*" of the free citizens," among those citizens?

Say however that it is only the *equitable* interest that passes into the drawer, and that the legal interest remains in the State, as security for the payment of the grant fee. Then what will follow so far as the present case is concerned?

Assuming this to be the true principle, then, in the present case, after the lot was drawn, and before the grant was issued, the equitable title was in Nicks, and the legal title was in the State—in the State for the use of Nicks on his paying the grant fee.

Now this equitable title was a transferable title. Even a *chance* for a draw in the lottery was transferable. *Dugas vs. Lawrence,* 19 *Ga.* 557.

It is true, that in *Garlick vs. Robinson,* 12 *Ga.,* 340, this Court held, that an equitable interest of this kind, was not subject to sale under *fi. fa.*; but this Court has never held,

that such an interest was not transferable.

And this equitable title or interest in Nicks, was transferred—transferred by him to Henderson.

In this way, the equitable interest became vested in Henderson, the legal interest still remaining in the State, but remaining there for the use of *Henderson*, on Nicks's paying the grant fee.

Whilst the equitable interest was thus vested in Henderson, the grant was issued to Nicks. Thereby, the legal title passed from the State into Nicks. But before the grant could issue, the grant fee had to be paid to the State; and when that was paid to the State, the lien on the land for the fee, became extinguished.

Consequently, when the legal title passed to Nicks, it conferred upon him no right to hold the land as security for the grant fee.

Again, Nicks being the person who had transferred the equitable title to Henderson, of course, had *notice* of the existence of that title when the grant was issued to him, and when, as a consequence, the legal title passed into him.

These things being so, it followed, that, when the legal title passed into him, it passed into him, as *a naked legal title for the use of Henderson*.

Now, on such a legal title as that, the statute of uses operates; and the operation of that statute, is, to convey the legal title to the holder of the use.

[2.] Therefore, when the legal title thus passed into Nicks, it immediately, under the operation of the statute of uses, passed out of him again, and into Henderson. *Pitts vs. Bullard, 3 Ga. R.*

But if, when the legal title passed into Nicks, it thus passed out of him into Henderson, then, it may be said with strict propriety, that when the legal title passed into Nicks, it " *inured* to the benefit of Henderson." And that it did this, is what the Court told the jury, in the charge now under consideration.

That charge, therefore, we think was right.

It is to be remembered, however, that this "inuring to the benefit of Henderson," is a thing which we attribute to the operation of the *statute of uses.* Whether it is not a thing that might not also be attributed, to some doctrine of *estoppel*, it is needless to inquire. I may say, that I strongly incline to think, it is not.

The remaining and last ground of the motion for a new trial was, that the verdict was against the law and evidence, as to title.

We think that the verdict was against neither.

That it was not against "the *law*," "as to title," on the supposition that *Eli* Nicks and *Elias* Nicks were the same person, and that that person was the drawer, is a point that may be left to what has already been said.

And this supposition is justified by the evidence. The jury thought so ; and, in our opinion, there was enough in the evidence, to make them think so. At least we may say this, that there was enough in the evidence to show that such a thought in the jury, was not one that was, "decidedly and strongly against the weight of evidence." *Acts of* 1853–54, 47.

If this supposition was justified by the evidence, then the verdict was not contrary to the evidence. This must be manifest.

Upon the whole, we think the Court erred in granting the motion for a new trial.

Judgment reversed.