## HADAWAY *et al. v.* SMEDLEY.

1. Where a father in possession of land under a bond for titles, a part of the purchase-money being paid, makes a parol gift of the land to a son, and the latter goes into possession and, on the faith of the gift, makes valuable improvements on the land, and subsequently the father acquires the legal title by a conveyance from the maker of the bond for titles, the title thus acquired by the father passes, by the statute of uses, into the son and inures to his benefit in preference to one to whom the father conveyed after he had acquired the legal title.
2. Under such a state of facts, when the son has been ousted from the possession, he is entitled to maintain an equitable petition for specific performance by the father, and to have the deeds made by the father canceled, after proving that the purchasers bought with notice of the son's equity as evidenced by his possession.

Argued November 21, — Decided December 14, 1903.

Equitable petition.    Before Judge Harris.    Troup superior court.    June 19, 1903.

*Payne & Tye, Longley & Longley,* and *J. A. Noyes,* for plaintiffs in error.    *T. A. Atkinson* and *D. J. Gaffney,* contra.

SIMMONS, C. J.    The record discloses that in February, 1883, J. M. Smedley purchased a certain tract of land from Houston for $2,050.    He was unable to pay the whole of the purchase-money,

and made an arrangement with Ferrell whereby the latter was to advance about $770, the balance, and the deed from Houston was to be made to Ferrell.   Ferrell under the same arrangement made Smedley a bond for titles.   Immediately after this arrangement was made, J. M. Smedley made a parol gift of a part of the land to his son, W. T. Smedley.   The son, acting on the faith of this gift, went into possession in the same year and made valuable improvements on the land, erecting tenant-houses, barns, and stables. Through the years 1884, 1885, and 1886 the son resided upon the land, exercising acts of control and ownership.   On February 24, 1886, the father having paid Ferrell the balance of the purchase-money on the land, Ferrell made him a deed in accordance with the bond for titles.   Owing large sums of money to other persons, the father applied to Ferrell and Longley for a loan, and agreed to make them a deed to all of his lands, consisting of more than 1200 acres, as security.   Ferrell and Longley went upon the land, examined it, and concluded to make the loan.   They did so, and on February 25, 1886, the day after Smedley had received the title from Ferrell, Smedley secured the loan of about $7,000 by making Ferrell and Longley a deed to all of his lands including that which he had given to his son.   Later in the same year Longley sold his interest in the land to Ferrell and conveyed this interest by deed.   Smedley, being unable to pay Ferrell, commenced negotiations with the Equitable Mortgage Company for a loan which would enable him to pay Ferrell.   In his application to the mortgage company he stated under oath that the land which he proposed to convey to it had been in his possession and the possession of those under whom he claimed for more than thirty-five years, and that his title had never been in dispute.   Freeman represented the mortgage company in investigating the titles and the value of the land.   After about two months, during which he went upon the land and examined it, Freeman recommended that the loan be made, and in February, 1889, the negotiations were concluded, the company advancing the money to Smedley and taking a security deed from him, dated February 14, 1889.   Ferrell reconveyed to Smedley by a deed dated February 18 of the same year.   The evidence tends to show that while these deeds were of different dates, they were delivered simultaneously and as part of one transaction.   In August, 1896, the Equitable Mortgage Co. con-

veyed the land to the Equitable Securities Co., and the latter, on November 1, 1899, conveyed to Hadaway the premises now in dispute, being a part of the plantation conveyed by Smedley to the mortgage company. From 1883, shortly after the parol gift from the father to the son, the latter remained in actual, open, and notorious possession of the land until the purchase by Hadaway; and Hadaway purchased with full knowledge of the possession of the son. Hadaway and the son having conflicting claims, the son gave up the premises to Hadaway, and brought his equitable petition against his father, for specific performance of the parol contract, and for decree that the father make him a deed in accordance with the gift; and also against the Equitable Securities Company and Hadaway, to cancel the deeds held by them as clouds upon his title. In his petition he stated in substance the facts recited above. The defendants denied generally the allegations in the petition, and claimed that the Equitable Securities Co. and Hadaway were innocent purchasers for value, without notice of the gift from the father to the son, and that the father had no right to make the gift while he held under bond for titles without the legal title. On the trial of the case the jury returned a verdict for the plaintiff, that the father should make title to the land, and the deeds to the other defendants be canceled. Decree was entered in accordance with the verdict. The defendants moved for a new trial. Their motion was overruled, and they excepted.

1. Several of the grounds of the motion for new trial make complaint of charges of the court and refusals to charge. The principles of the charges of which complaint is made are contained in the headnotes. The judge charged these principles, and refused to charge to the contrary. He charged in substance that the father, holding the land under bond for titles with only a part of the purchase-money paid, might make a parol gift to the son; and that if the father subsequently acquired the legal title, it would inure to the benefit of the son. He also charged that if the son was in possession of the land at the time the father conveyed it to other persons, this possession, if open and notorious and in his own right, was notice to the world of any claim or right the son had in the land. We think the first proposition is well established by the decisions of this and other courts. When a person is in possession of land, having an equity therein but not the title, and he sells to

another, if he subsequently acquires the title, it immediately passes, by the statute of uses, into the vendee.    It does not stop in the vendor, but passes through him into his vendee; and this is true although the seller may afterward sell and convey to another and different person.    This other person would get no title, because his vendor had none to convey, the statute of uses having taken it from him as soon as he acquired it and put it in the person to whom he had first sold.    The same doctrine, in our opinion, applies when a father holding land under a bond for titles, with part of the purchase-money paid, transfers it to his son by parol gift, and the son on the faith of the gift enters upon the land and makes valuable improvements.    The father, holding under bond for titles with part of the purchase-money paid, has an equitable interest in the land.    As between the father and son the gift is complete as soon as the son enters and improves, and the father has then no right to revoke the gift or to sell the land to another. In the case of *Henderson* v. *Hackney*, 23 *Ga.* 383, it appeared that one Nicks drew a lot of land.    Before the grant issued to him and before he paid the grant fee, he sold and transferred his equity to one Henderson.    Nicks afterwards paid the grant fee, and the grant issued to him.    He thereupon sold the land to Holcombe, under whom Hackney claimed.    This court held, as stated in the second headnote, that "After the draw and before the grant, the equitable title is in the drawer, and the legal title is in the State for the use of the drawer on his payment of the grant fee.    This equitable title is transferable; when transferred, the legal title in the State becomes a legal title for the use of the *transferee* on the payment of the grant fee.    Consequently, on the issuing of the grant to the drawer, the legal title passes through him, without stop, into the transferee, by virtue of the statute of uses."    This case was cited and approved in *Walker* v. *Wells*, 25 *Ga.* 143.  See also the reasoning in *Dudley* v. *Bradshaw*, 29 *Ga.* 17; *Thursby* v. *Myers*, 57 *Ga.* 156 (5).    In the case of *Parker* v. *Jones*, 57 *Ga.* 205, Jackson, J., in discussing this same question, said:    "If a vendor convey land to a purchaser before he acquire title himself and he subsequently acquire the title, does such title enure to the benefit of the vendee as against subsequent purchasers or mortgagees?    We think it does, and such subsequent mortgagee and those holding under him by subsequent conveyances hold subor-

dinate to the title which vested in the first vendee the moment the vendor himself got it." See also *Pridgen* v. *Green,* 80 *Ga.* 738. Under these decisions we hold that Smedley, the father, having paid the larger part of the purchase-money and being in possession of the land under bond for titles, had an equity in the land, that this equity was transferable, and that, the father having given a part of the land to his son and the latter having on faith of the gift taken possession of the land made thereon valuable improvements, when the father acquired the legal title it inured to the son and was good as against the father and against those who subsequently purchased from the father with notice of the son's interest.

2. Complaint is also made in the motion for new trial that the judge erred in charging that " possession of land is notice of whatever right or title the occupant has, to anybody. Well, if . . at the time Messrs. Ferrell and Longley took a deed from Smedley to this property, this plaintiff was in possession of it,— actual possession of it so it could be seen by any one that he was in possession of it, controlling it, managing it and in possession of it, then I charge you that fact is equivalent to notice, and they would have got no title from Smedley that would be good as against the title of the plaintiff in this case." This charge seems to have been based upon the Code of 1895, § 3931. If it had been a new principle announced for the first time in that code, it might not have applied to some of the transactions in this case ; but it is not a new principle and has always been the law in this State, as will be seen by reference to the opinion of Bleckley, C. J., in *Broome* v. *Davis,* 87 *Ga.* 587, from which this section of the code was taken. That case has been uniformly followed since by all the cases which discuss this question. The principal complaint of the court's charge was, however, that it did not apply to the facts of this case ; that there was no evidence showing that the purchasers from the father had actual notice of the son's equity, or that the son had such possession and for such length of time as to put them upon inquiry. The record discloses that the son took possession of the land shortly after the parol gift in 1883, that he erected houses and barns upon the place and resided there most of the time. He cultivated the place by himself and tenants. It is true that between the time of finishing the cultivation of the crops and the time to commence gathering them, he,

being a single man, lived at the home of his father, which was upon another and separate tract of land. For the most of the year he resided upon the place and exercised acts of ownership and control. The purchasers in examining the land (and the record shows that Ferrell and Longley examined the land before advancing money upon it), seeing the evidences of the son's possession, should have inquired of the son or of his tenants whether they claimed the land under the father or in some other right. Had they made such inquiry, particularly of the son, they would probably have learned of the son's claims to the premises. Had the son told them that he had no interest in the premises, then of course he would have been estopped as against them, if he had knowledge or notice of their purpose in making the inquiry. We think it is the duty of a purchaser of land, when he examines the premises and finds it in possession of others than the holder of the legal title, to make inquiry as to the right or interest of the occupants. If the tract he wishes to purchase includes a portion not contiguous to the main tract, and he finds such separated portion in possession of others than the person with whom he is dealing, he should investigate and ascertain upon what right or claim such possession is based. The evidence in this case discloses that the one hundred acres of land now in dispute did not originally belong to the plantation of the elder Smedley, and it is separated therefrom by intervening lands of other persons. When Ferrell and Longley went over the place to see whether they should advance money upon it, and they found this one hundred acres, separate from the home of the father, in the possession of the son, they should have inquired into the interest or claim of the son. The same rule applies to the purchase of the Equitable Mortgage Co. Its agent took two months to examine the property and the titles. The possession of the son, with his tenants and houses and barns, should at least have put the agent upon inquiry as to the right of the son to occupy and control the place.

But it is argued that Ferrell conveyed the land to the father on February 24, 1886, and the father made a conveyance including this same land to Ferrell and Longley on February 25, 1886, and that therefore there was but one day intervening, which was not sufficient to put Ferrell and Longley upon notice of the son's rights; that the purchasers should have had reasonable time

within which to make their investigation. If one purchases land from another, or takes it as security for a loan, when he knows or ought to know that still another is in possession of it, the doctrine of reasonable time does not apply. The possession is enough to put him· upon notice, and he should make inquiry before he .purchases or makes the loan. He need not make the purchase or loan until he is fully satisfied as to the title. If he acts within one day and thus takes but a short time for pursuing his inquiries, he can not afterward avoid the effect of the notice by claiming that he did not allow himself a reasonable time for investigation. Carr *v.* Hilton, 1 Curt. 390, cited in 21 Am. & Eng. Enc. L. 585, related to an entirely different state of facts, and is not applicable to a case like the present. The loan by the Equitable Mortgage Co. was made after two months for investigation, and during all of this time the son continued in possession of the land. The doctrines applied to the loan by Ferrell and Longley apply with even greater force to the loan by the mortgage company. Freeman, its agent, went upon the land to examine it, and must have had notice as to the son's possession and occupancy. The Equitable Securities Co., the assignee and transferee of the Equitable Mortgage Co., had all the notice that can be given by long-continued possession of land ; for it bought the property after the son had been in possession some thirteen years. It may be well to observe that the able and learned judge who tried this case in the court below charged the jury fully as to the principle announced in *Achey* v. *Coleman,* 92 *Ga.* 745, that where land.is conveyed to a person who simultaneously conveys it to another as security for a loan, the two conveyances being parts of one transaction, the title passes through the borrower without being affected, as against the lender, by any claims which would have attached had the title remained in the borrower. The jury found that the conveyance of Ferrell to the father and the conveyance of the latter to Ferrell and Longley were separate and independent transactions ; and there being evidence to support this finding, there was no error in refusing a new trial. The motion for new trial also complained of a certain charge as being without evidence upon which to base it. This charge was more hurtful to the plaintiff than to the defendants. It was not of such character as to have affected the result, especially as it was cured by a statement made further on in the

charge.　There was also a complaint that the judge failed to so restrict certain evidence that it should affect J. M. Smedley only, ruling it out as to the other defendants ; but under the note of the court to the motion it is clear that the evidence was so restricted, and there was no error in the action of the judge with respect to this evidence.　*Judgment affirmed.　All the Justices concur.*