## HARRELL, administrator, *v.* NICHOLSON.

The payee of a note, a short time before his death, sent for the maker and directed him to look in a certain box in the house for the note and to take it and keep it. Upon being informed that the note could not be found in the box, he told the maker to look in his private file at the bank, where he would find the note, and to keep it when he found it. The maker was unable to find the note at the bank or elsewhere. After the payee's death a third person found the note in the house and turned it over to the administrator. *Held*, that the transaction did not constitute a gift, there being no actual delivery of the note to the maker, and nothing which the law would accept in lieu thereof.

Argued January 15, — Decided February 12, 1904.

Complaint on note. Before Judge Littlejohn. Stewart superior court. February 19, 1903.

*B. F. Harrell & Son* and *Blalock & Cobb*, for plaintiff.
*J. B. Hudson* and *E. A. Hawkins*, for defendant.

COBB, J. This was an action by the administrator of D. B. Harrell against D. W. Nicholson, upon a promissory note signed by the defendant and made payable to D. B. Harrell. The only questions with which we find it necessary to deal arise out of a plea that the intestate, shortly before his death, gave the note to

the defendant, intending thereby that the debt should be cancelled. ' The plea set up that the intestate "cancelled and surrendered" the note to the defendant, in consideration of past services rendered by him, but that the note itself could not be found, though diligent search was made for it, at the request of the intestate, both at the bank where he kept some of his papers and at his home ; that the intestate thought the note was at the bank, and instructed the defendant to go there and get it and keep it. There was evidence for the defendant to the effect that while the intestate was ill, and a short time before his death, he told the defendant to get his private box and to look in it and get his note. Upon being told that the note could not be found in the box, the intestate told the defendant that the note would be found in his private file at the bank, and that he had intended taking it to defendant. The defendant afterwards looked through this private file, but could not find the note. Some months after the intestate's death the note was found in his house and turned over to his administrator. The evidence shows a gift inter vivos, if gift at all. There was nothing to show that the intestate intended the gift to be absolute only in the event of death, and hence it could not be a gift mortis causa. The distinction between the two will be found stated in *Burt* v. *Andrews*, 112 *Ga.* 466. This distinction is, however, unimportant in this case. All are agreed that to constitute a gift there must be a present intention to give, and that this intention must be accompanied with delivery. Actual manual delivery is not essential in all cases. Constructive and symbolical delivery has been held to be sufficient under certain circumstances. If the property is bulky and the present intention to give is clear, and the donee, as soon thereafter as practicable, reduces the property to possession and exercises dominion over it, the gift will be upheld. 14 Am. & Eng. Enc. L. (2d ed.) 1021–1022 ; Thornton on Gifts, § 140. And it·has been held that the delivery of a key to a chest or trunk is sufficient, if all the other elements are present. 14 Am. & Eng. Enc. L. (2d ed.) 1021–1022 ; Page *v.* Lewis, 18 L. R. A. 170. It has also been held that the gift was complete where the donor pointed out to the donee several places where money was buried, the donee afterwards going to the places thus indicated, digging up the treasure, and reducing it to possession. Waite *v.* Grubbe (Oregon), 73 Pac. 206.

Our code, which is but a codification of the common law on the subject, states the rule thus:   " To constitute a valid gift, there must be the intention to give by the donor, acceptance by the donee, and delivery of the article given, or some act accepted by the law in lieu thereof." Civil Code, § 3564.   There must be in every case a delivery of some sort, such a delivery as would put it beyond the power of the donor to revoke the gift.   He must relinquish all dominion and control over it as owner, and part absolutely with the title.   *Evans* v. *Lipscomb*, 31 *Ga.* 71 (3) ; *Mims* v. *Ross*, 42 *Ga.* 121 (2); *Smith* v. *Peacock*, 114 *Ga.* 691 (1).   In *Burt* v. *Andrews*, 112 *Ga.* 465, a woman, during her last illness and a short time before her death, said to her sister:   " There is the china and washstand set, and you may have them."   No actual delivery of the property was made, and after the owner's death her husband sold the articles.   In a suit brought by the sister against the purchaser, the gift was held to have been incomplete.   The rule as to delivery is not so strictly applied to transactions between members of a family living in the same house, the law in such cases accepting as a delivery acts which would not be so regarded if the transaction were between strangers living in different places.   See Thorn. Gifts, § 169.   Accordingly in *Moore* v. *Cline*, 115 *Ga.* 405, a gift of a horse from a son to his mother was upheld, where it appeared that both lived in the same house, that there was but one horse lot on the place, that the horse remained in the stable; that no actual delivery of it ever took place, but that the mother accepted the gift and exercised rights of ownership and control over the horse.   The fact that the subject-matter of the gift may be lost or inaccessible at the time the intention to give is expressed can make no difference, if nothing equivalent to delivery takes place.   Thornton on Gifts, §§ 140, 157.   In Appeal of Horner, 2 Penny, 289, the payee and holder of promissory notes, a few days before his death, said to a third person that he did not want the maker to pay them. Within forty-eight hours of this time he sent for the maker to draw his will.   He directed that the notes be deducted from an estimate of his personalty, and told the maker that the notes were his ; that they were in a drawer in another room ; that the key of the drawer was in a secretary in the room where he lay, and told him to get the notes.   After the departure of the maker the payee

told his housekeeper that he had given the notes to the maker, naming him. Four or five days after his death the maker took possession of the notes. It was held that there was no delivery of the notes sufficient to render the gift complete.

As title to a promissory note may pass by delivery, it needs no written assignment of a note to make a gift of it complete. But in this case no actual delivery of the note has been shown, and nothing which the law would accept in lieu of such delivery. Nothing more than a present intention to give was shown. The note was not found, and the gift was not completed. The defendant was told to get the note and keep it, but he never did this. He made an effort to do so, but the fact remains that he never exercised any dominion or control over the paper. The plea setting up the gift was bad in substance, in that it failed to aver with certainty a delivery of the note, actual, constructive, or symbolical; and the verdict, which merely found that this plea, which was bad in law, was true in fact, should have been set aside. See, in this connection, *Crew* v. *Hutcheson*, 115 *Ga.* 533–534.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*