## APPEAL OF F. W. GASKINS.

Docket No. 4242.   Decided July 31, 1926.

1. TITLE OF LAND ACQUIRED BY GIFT.—The taxpayer made a grant in the nature of a gift by word of mouth of a definite tract of land to his son and another definite tract of land to his daughter, both of whom at the time had passed the age of 21 years. The grantees immediately entered upon possession of their respective tracts; enclosed the same with fences; made farming improvements; built residences thereon and thereafter continued in open adverse and generally known possession thereof for a period of

more than seven years prior to November, 1919. *Held,* that under the facts in this case, and the statutes of the State of Georgia, the said son and daughter were on the 26th day of November, 1919, the owners of their said respective tracts of land and of all the standing timber thereon, and properly accounted for their respective shares of the gains resulting from the sale of such timber in the year 1919.

2. VALUE OF TIMBER ON MARCH 1, 1913.—The March 1, 1913 value of standing timber and turpentine rights *held* to be properly determinable from opinion evidence of persons qualified by experience and acquaintance with the property to testify concerning such values.

3. YEAR IN WHICH GAIN FROM SALE IS INCOME.—Taxpayer sold standing timber and turpentine rights in the year 1919, at the same time granting the purchasers a period of seven years within which such timber could be cut, manufactured, and removed. Approximately one-half of the selling price was paid in the year 1919 and the balance in the year 1922. Under the evidence in this case, *held,* that the gain derived from the total selling price was gross income of the taxpayer in the year 1919.

*Frank Reagan, Esq.,* for the petitioner.
*T. P. Dudley, Jr., Esq.,* for the Commissioner.

Before TRUSSELL, LITTLETON, and SMITH.

This proceeding has been brought for the redetermination of an asserted deficiency in income tax for the year 1919 in the amount of $8,212.67, and the taxpayer has alleged three specific errors on the part of the Commissioner, as follows:

(1) That the Commissioner has charged this taxpayer with the receipt of gross income from the sale of timber, parts of which were owned by other persons who reported their proportionate parts of gains derived from the sale of such timber.

(2) That the Commissioner determined the March 1, 1913, value of the timber to be $150,000, when its true value at that time was not less than $175,000.

(3) That the gain derived from the sale should be apportioned between the years 1919 and 1922 when the taxpayer received payments of the selling price of the timber.

FINDINGS OF FACT.

Taxpayer is an individual residing in Berrien, Ga. He was one of the pioneers of Berrien County, and over a long period of years prior to 1911 he acquired numerous contiguous tracts of timber land aggregating 8,305 acres.

Late in the year 1911, or early in the year 1912, he, by word of mouth, made a gift and grant of a certain definite portion of said tract, amounting to 1,066 acres, to his son, A. W. Gaskins, and at the

same time, by word of mouth, made a gift and grant of another certain definite tract of said land of 980 acres to his daughter, Mrs. A. H. Giddens. Both son and daughter had at that time passed the age of 21 years. They each immediately accepted such gift and grant of land and entered into possession thereof, enclosed their respective grants with durable fences; cleared portions thereof for agricultural purposes; built homes and other building improvements; and thereupon established their respective residences on their several tracts so acquired. From that time on, without interruption, they continued to cultivate portions of said land; to return the same for state and local taxes in their individual names; and to pay such taxes out of their own funds and in every way to exercise the rights of ownership and dominion over their respective tracts, and their ownership and claim of title to such tracts was a matter of common knowledge throughout the surrounding neighborhood. At no time subsequent to the making of the gifts and grants above described did this taxpayer ever pretend to exercise any rights of ownership or dominion over the tracts of land granted to his son and daughter, respectively, and at no time after the receipt of such grant did the son or daughter ever disclaim the ownership and the responsibilities which accompany such ownership of such land or do any other act or thing which could have defeated their title thereto.

On November 26, 1919, the taxpayer negotiated with Norman & Willis a sale of all the standing merchantable timber and turpentine rights, standing and existing upon the entire tract of 8,305 acres, for a fixed selling price, including the privilege to the purchasers and their assigns of going upon the land, harvesting the turpentine, and cutting the merchantable timber, manufacturing it into lumber, and removing the same during a period of seven years from and after December 31, 1919. This sale was evidenced by a written instrument made by the taxpayer, the relevant portions of which are as follows:

THIS INDENTURE made this the 26th day of Nov. 1919 by and between F. W. Gaskins, of the county of Berrien, State of Georgia, as party of the first part, and J. T. Norman, M. D. Norman, V. F. Norman of Colquit County and G. H. Norman, W. H. Willis, Jr., of Lowndes County and J. M. Willis of Irwin County, State of Georgia, as parties of second part.

WITNESSETH: That for and in consideration of the sum hereinafter mentioned the said party of the first part has granted, bargained, demised, sold, and leased and by these presents does grant, bargain, sell and lease to the said parties of the second part their heirs and assigns, all and singular *the alive, green growing, pine timber for saw mill and turpentine purposes or any other purpose* and *outside of the cultivated lands,* and above the size of fourteen inches in diameter and said timber to be measured two feet from the ground and to be cut as to saw mill purpose two feet from the ground. It is further understood that in determining the diameter of said timber two feet

from the ground the parties of the second part are allowed the privilege of applying the gauge namely fourteen inches, from such angle as will insure the maximum size of the tree, on the following described lands, to wit: [Description]

The said parties of the second part, paying to the party of the first part for the use and privilege of said timber the sum of Two Hundred Fifteen Thousand and no/100 Dollars, $215,000, receipt of which is hereby acknowledged. And it is expressly understood and agreed by and between the parties hereto, as a part of the terms of said lease, that the said *parties of the second part are to have the* use and enjoyment of said timber for and during the term *of seven years from December Thirty First, Nineteen Hundred Nineteen (December 31, 1919)*.

Of the total selling price, the sum of $115,000 was paid in cash to the taxpayer at or about the date of the execution of the above-described instrument, and upon the receipt of said payment the taxpayer caused the amount so received to be divided between himself, his son, and his daughter in substantially the true proportion of acreage owned by each of them. The balance of the selling price, $100,000 with interest thereon, was paid to the taxpayer during the year 1922, and he thereupon caused the sum so received to be divided between himself, his son, and his daughter in substantially the same proportion as the acreage owned by each of them.

When the taxpayer made his income-tax return for the calendar year 1919, he computed his gross gain from the sale of such timber on the basis that the March 1, 1913, value of the entire tract was $175,000, and he reported his proportionate share of the gain estimated upon that basis as a part of his gross income for the year 1919, and his son and his daughter likewise reported their proportion of gains derived from the said sale. Shortly after the consummation of the sale above described, the taxpayer caused proper deeds of conveyance to be made of the specific tracts of land given and granted to his son and daughter, respectively, more than seven years prior thereto.

In auditing the taxpayer's income-tax returns for the year 1919, the Commissioner charged him with the gross gain of all the timber sold standing upon the entire 8,305 acres, estimated the March 1, 1913, value thereof at $150,000 and considered the total gain derived from sale as gross income for the year 1919.

Upon the record of this case the Board has found that the fair market value of the timber and rights pertaining to the entire tract of 8,305 acres sold in November, 1919, was on March 1, 1913, $175,000.

OPINION.

TRUSSELL: 1. The grant of land by word of mouth and delivery of *seisin* without any written instrument is as old as the beginning of the English common law and in vogue for many centuries when

the art of writing was little known. The making of written deeds of conveyance and the public record thereof are comparatively modern contrivances developed of necessity from the complexity of modern business conditions. A grant of land accompanied by delivery of possession is no less a grant than when evidenced by a deed of conveyance.

The United States Supreme Court clearly stated the law in the case of *Neale* v. *Neales*, 9 Wall. 1, 9, where the court said:

Equity protects a parol gift of land, equally with a parol agreement to sell it, if accompanied by possession, and the donee, induced by the promise to give it, has made valuable improvements on the property.

This is the common-law rule enunciated in 1869 and has not since become less favorable to the donees. *Riggles* v. *Erney*, 154 U. S. 244, 254; *Townsend* v. *Vanderwerker*, 160 U. S. 171. The donees in the Gaskins case have complied with this rule, and more.

The land involved is in the State of Georgia. The law of that State governs the devolution of land between private individuals there. The decisions of its courts are in accord with the views above stated. In *Harrell* v. *Nicholson*, 119 Ga. 458; 46 S. E. 623, 624, the court said:

Our code, which is but a codification of the common law on the subject, states the rule thus: "To constitute a valid gift, there must be the intention to give by the donor, acceptance by the donee, and delivery of the article given, or some act accepted by the law in lieu thereof." Civ. Code 1895, § 3564.

In the case of *Hadaway* v. *Smedley*, 119 Ga. 264; 46 S. E. 96, the syllabus written by the court said:

1. Where a father in possession of land under a bond for titles, a part of the purchase money being paid, makes a parol gift of the land to a son, and the latter goes into possession, and, on the faith of the gift, makes valuable improvements on the land, and subsequently the father acquires the legal title by a conveyance from the maker of the bond for titles, the title thus acquired by the father passes, by the statute of uses, into the son, and inures to his benefit, in preference to one to whom the father conveyed after he had acquired the legal title.

2. Under such a state of facts, when the son has been ousted from the possession he is entitled to maintain an equitable petition for specific performance by the father, and to have the deeds made by the father canceled, after proving that the purchasers bought with notice of the son's equity, as evidenced by his possession.

The parties to this appeal have brought themselves clearly within the requirements here stated.

*Walker* v. *Neil*, 117 Ga. 733; 45 S. E. 387, was a suit in equity brought by Mrs. Neil and involved her title to a dwelling house and lot. Her father had made an unconditional parol gift of the property to her and placed her in possession, since when she had been "in the open, notorious, continuous, exclusive, and adverse possession of the same under claim of title, occupying the dwelling house

as a residence." He frequently stated that he would deed the property to her but died without having done so. Seven years after his death the executor of his will sold the property and accepted as consideration a debt due the grantee from the father's estate and executed a deed in her favor. The court held in favor of Mrs. Neil that the grantee under the deed took nothing.

In further support of the taxpayer's position it is found that the State of Georgia, within which this taxpayer resides and within which his and his children's property is located, has in its statutory law the following provision (Georgia Code, 1910, vol. I, p. 1019, section 4151):

PRESUMPTION OF GIFT. The exclusive possession by a child of lands belonging originally to the father, without payment of rent, for the space of seven years, shall create conclusive presumption of a gift, and convey title to the child, unless there is evidence of a loan, or of a claim of dominion by the father acknowledged by the child, or of a disclaimer of title on the part of the child.

We are thus led to the conclusion that on November 26, 1919, the taxpayer's son, A. W. Gaskins, and his daughter, Mrs. A. H. Giddens, were each the owners of tracts of land of 1,066 and 980 acres, respectively, and that they were then the owners of the timber standing on said lands and all the rights pertaining thereto. The fact that they did not join in the execution of the instrument of sale of such timber can not have the effect of defeating their title to the timber, their right to participate in the distribution of the selling price thereof, and their duty to account under the income-tax laws of the United States for their share of the gains derived from the sale of such timber. And the taxpayer herein can not be charged with a greater portion of the gains derived from such sale than the proportion of his retained acreage was to the acreage of the entire tract belonging to himself and to his son and daughter.

2. Ten witnesses, all of whom qualified by virtue of their experience and knowledge of the properties here in question, gave opinion testimony concerning the value of the property and rights here in question as of March 1, 1913. Each of these witnesses gave independently his opinion as to the March 1, 1913, value of this timber. The lowest estimate was $171,000 and the highest $210,000. One of the witnesses testified that either in 1913 or 1914 Norman & Willis, who finally bought this timber in 1919, authorized him to negotiate for the purchase of the same properties at that time and fixed the maximum amount which they were willing to pay at $181,000. In view of this testimony, we are convinced that on March 1, 1913, the timber and property rights, sold in 1919, had a value of $175,000, and we have, therefore, found the said amount to be the fair market value of the properties on March 1, 1913.

3. It appears from the record of this case that the parties to the selling and purchasing transaction all regarded it as a completed deal in the year 1919 and regarded the deferred payment in the light of an extension of credit on the part of the vendors to the vendees; that the taxpayer as well as his son and daughter, in making their income-tax returns for the year 1919 computed their gross gain on the basis of a completed transaction; and, although there is no evidence of any bookkeeping or accounting on their part, we are of the opinion that upon the evidence in this case the taxpayer is properly chargeable with gross income for the year 1919 in the amount of all of his proportion of the gain realized from the sale, although a portion of it was not actually received in money until a later year.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*