### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

### AT MACON,

# JUNE TERM, 1859.

Present—JOSEPH H. LUMPKIN,
HENRY L. BENNING, } Judges.
LINTON STEPHENS,

LESSEE OF OLIVER DUDLEY, and JACK HARDMAN, plaintiff in error, vs. CHARLES BRADSHAW, tenant in possession, defendant in error.

Dudley drew a lot of land. Before the grant issued, he conveyed the land by a warranty deed, to Swift, and received from Swift, the purchase money, and Swift took, and by himself or his assigns, kept possession    After the grant issued, Dudley conveyed the lot, by deed, to Hardman—Swift, or one of his assigns, being at the time of the conveyance, in possession. This younger deed was never recorded. Hardman brought ejectment on this younger deed.

*Held*, That he was not entitled to recover.

Ejectment, in Marion Superior Court. Tried before Judge WORRILL, at March Term, 1859.

This suit was brought by plaintiff in error, for the recovery of lot of land number one hundred and three, in the eleventh district of Marion county.

VOL. XXIX.—2.

On the trial, plaintiff read in evidence the grant to said lot from the State of Georgia to Oliver Dudley, dated 10th December, 1835; then a deed from Oliver Dudley to Jack Hardman, conveying said lot of land, dated the first day of April, 1857, not recorded, and containing the usual clause of warranty. Defendant having admitted possession, plaintiff here closed his case.

Defendant then opened his case, and read to the jury a deed from Oliver Dudley to Allen Swift, dated March 13th, 1828, recorded October 16th, 1858, conveying said lot of land, with the usual clause of warranty; then a deed from said Swift to Thurmond, dated 20th February, 1836, recorded 16th October, 1858; then a deed (without objection by plaintiff,) made by said Thurmond to Thomas R. Greer, dated 3d November, 1851, and not recorded; then a deed made by said Thomas R. Greer to John T. McBryde, dated 6th February, 1857, recorded 29th December, 1857, and then closed his case. McBryde was, by himself or tenant, in possession of the land, at the date of Dudley's deed to Hardman.

The Court charged the jury that, upon the foregoing statement of facts, the plaintiff could not recover, and plaintiff excepted, and now assigns the same as error.

BLANDFORD & CRAWFORD, for plaintiff in error.

SMITH & POU; and PERRYMAN, contra.

By the Court.—BENNING J. delivering the opinion.

Oliver Dudley drew the land. In 1828, after he had drawn it, but before he had obtained a grant for it, he made a deed for it to Allen Swift, in which deed, there was a clause of warranty, and, it is to be presumed, the usual receipt for the purchase money. In 1835, the State granted the land to Dudley. In 1836, Swift made a deed for the land, to Thurmond; afterwards, Thurmond made a deed to Greer; and then Greer, a deed to McBryde. Bradshaw was in posses-

sion under McBryde, at the commencement of the action; and this possession, either in Bradshaw, or in him and some one or more of the others, his predecessors in the title, extended back, we must presume, to the date of Swift's deed from Dudley.

This title coming through Swift, was the title under which the tenant in the ejectment claimed.

Dudley, the drawer, made a second deed for the land—a deed to Jack Hardman.    This deed was made on the first day of April, 1857; consequently it was made after the issuing of the grant, or whilst Swift, or some of h.s assigns aforesaid, was in possession under the first deed—the deed to Swift.    It is probable, that it was made while Bradshaw was in possession, for he was in possession at the commencement of the suit, and the date of the second deed, was only a few months previous to the commencement of the suit.    This second deed was never recorded.

This was the title under which, the plaintiff in the ejectment claimed.

Such being the titles under which, the parties respectively, claimed, the Court charged the jury, that the plaintiff was not entitled to recover.    The question is, was that charge right?

The charge was right, if what Swift acquired from Dudley, was the legal title ; or if it was." a complete equity," and Hardman had notice of it, when he purchased from Dudley. This we may assume.

First, then, was it the legal title, which Swift acquired from Dudley—the latter being, at the time when he made the deed to Swift, only the drawer, not the grantee?    It was, if what Dudley held by his naked draw, was the use, and that use was, by the statute of uses, afterwards, on the payment of the grant fee and the issuing of the grant, executed in Swift, his assignee.

That Dudley's draw gave him at least, the use, the State retaining the legal title, I suppose there can be no doubt.

Whether it did not also give him the legal title—the legal fee subject to be defeated on his failure to pay the grant fee and take out the grant, is, with me, rather the doubt. Let us say, however, that the draw gave him only the use, leaving the legal title still in the State. The effect then of the draw, was, to make the State hold the legal title to his use, a use subject to be defeated by his failure to pay the grant fee and take out the grant.

That use he conveyed to Swift, and thereby, the use passed into Swift, the State still retaining the legal title; and thus the effect was, that the State became the holder of the legal title, for the use of Swift—a use still subject to be defeated, by a failure to pay the grant fee and take out the grant.

While the State was thus holding the legal title, for the use of Swift, Dudley paid the grant fee and took out the grant, the issuing of the grant to him, being evidence, that he had paid the grant fee. Thus the legal title passed from the State, to Dudley, and he became the holder of that title, for the use of Swift—a use then no longer subject to be defeated; but absolute; as, Dudley had paid the grant fee, and taken out the grant. The legal title being thus in Dudley, he stood 'seized" of the land "to the use" of Swift—a use then grown absolute and unconditional.

Was this use executed in Swift, by the statute of uses? Did the statute work a transfer of the legal title, to Swift?

The statute declares: "That where any person or persons stand or be seized" "of, and in, any" "lands," "to the use, confidence, or trust, of any other person," "by any manner, means, whatever it be," the person or persons that have "any such use, confidence or trust," "shall, from thenceforth, stand, and be seized, deemed and adjudged in lawful seizin, estate, and possession, of, and in, the same" "lands," "of, and in, such like estates as they had, or shall have, in the use, trust, or confidence, of, or in, the same; and that the estate, title, right, and possession, that was in" the person seized to the "use," &c., shall be "deemed and adjudged to be in him or

them that have" " such use," &c,, " after such quality, manner, form, and condition, as they had before in, or to, the use, confidence, or trust, that was in them." *Schley's Dig.* 183·

This being the statute, and Dudley standing " seized" of the land, to the use of Swift, a use absolute in Swift, it is clear, that the statute must have executed the use, in Swift, by working a transfer of the legal title, out of Dudley, into him, unless there is some other law which came in, and prevented the statute from so doing.

Is there any such law ?

Parliament, after passing the statute of uses, at the same session, passed another statute by which, it declared, that no bargain and sale, " except the same bargain and sale be made by writing, indented, sealed, and enrolled," " within six months next after the date of the same writing," &c., shall suffice to create any " freehold," or, " any use thereof." *Sch. Dig.* 174, *note.* But this statute does not apply ; because, in the first place, there is nothing in the record to show, that the deed to Swift, was a deed of bargain and sale, and it may have been a feoffment ; and, in the second place, this statute of enrollment, was never in force in Georgia—she having in the beginning, made registration laws of her own.

Are not these registration laws such that they have interfered with the statute of uses, in a way to prevent it from executing this use?

These laws extend to deeds of feoffment, and, to deeds of lease and release, as well as to deeds of bargain and sale. *Cobb Dig.* 161. They prescribe a time within which, "deeds" are to be recorded ; they declare, that the younger of two deeds, made by the same person, shall prevail over the older, in certain cases ; namely, cases in which, the younger deed is duly recorded, and the older not, and the donee in the younger, has not, when he accepts it, any notice of the older. The effect of this, is, that in these cases, the older deed becomes void, in relation to the younger.

May it not be, that these registration laws themselves—

these registry Acts of our own, so interfere with the statute of uses, as to prevent it from executing the use, in such a case as the present?

Whay say the registry Acts? A rule to be deduced from the registry Acts, as construed by this Court, may, I think, be thus stated: A younger conveyance, if recorded within the time prescribed by the Acts, shall prevail over an older conveyance, made by the same person, if the donee in the younger, have no notice of the older, when he accepts the younger, but that, if the older have been itself recorded within the prescribed time, the presumption shall be, that he did have such notice of the older. Notice is to be the test; but recording in due time, is to be conclusive evidence of notice. And from this rule, there would seem to follow, this corollary, that a younger conveyance, if duly recorded, shall prevail over an older agreement to convey, if the purchaser under the conveyance, have no notice of the agreement to convey; because what is sufficient to prevail over a thing completed, ought to be sufficient to prevail over the same thing not completed; and a conveyance is but a complete agreement to convey; therefore, what is sufficient to prevail over a conveyance, ought to be sufficient to prevail over an agreement to make the conveyance.

Whether recording the agreement to convey, would be notice of that agreement, to the subsequent purchaser, is another question. If the agreement was one amounting to a deed of bargain and sale, it would, I think, be recordable; and if recordable, the record of it, would be notice of it, to subsequent purchasers. It is clear, that the registration acts all provide for the registration of deeds of bargain and sale. (*Pr. Dig.* 158, 160, 162.) And an agreement to convey, may amount to a deed of bargain and sale. Blackstone says of the deed of bargain and sale, that it " is a kind of real contract, whereby the bargainor, for some pecuniary consideration, bargains and sells, that is, contracts to convey, the land to the bargainee, and becomes by such a

bargain, a trustee for, or seized to the use of, the bargainee: and then the statute of uses completes the purchase; or, as it hath been well expressed, the bargain first vests the use, and then the statute vests the possession." (2 *Black. Com.* 338.) So, Cruise says; "The proper and technical words of this conveyance, are, "bargain and sell;" but *any other words* that would have been *sufficient to raise a use* upon a *valuable consideration,* before the statute, are now sufficient to constitute a good bargain and sale." *Tit.* 32, *ch.* 9, *sec.* 4–5, *of Cruise's Dig.* And, in proof of this proposition, he gives, among other cases, this one; "if a person covenants, in consideration of money, to stand seized to the use of his son, in fee; if the deed be enrolled, it will be a good bargain and sale, though the words bargain and sell, be not used. (*Id.* 7.) And if a covenant to stand seized, would, why would not, a covenant to convey?

So, Sugden says; "Equity looks upon things agreed to be done as actually performed; consequently, when a contract is made for sale of an estate, equity considers the vendor as a trustee for the purchaser of the estate sold, and the purchaser as a trustee of the purchase money, for the vendor." 1 *Sug. Vend. and Pur.* 274.) And there can be no doubt, I suppose, that this is so.

Then an agreement to convey, may amount to a deed of bargain and sale. When does it do so? It does so, I suppose, when the part of it, to be performed by the purchaser, has been fully performed by him; as, when he has paid the whole of the purchase money.

The present case, however, is not the case of an agreement to convey; it is the case of an actual conveyance. Dudley, the drawer, made a conveyance of the land to Swift. We may, therefore, dismiss the corollary, and confine ourselves to the rule.

Some of the cases in which, a younger deed will, by this rule be made to prevail over an older, will be cases in which the older, (if operative,) would convey only a use; as, the case, in

which, the vendor had himself only the use, when he made the older deed, and acquired the legal title afterwards. In this case, the statute of uses would say, that the older deed should prevail over the younger, for it would say, that, as soon as the vendor acquired the legal title, that title was to be "adjudged" as instantly transferred from him to the person to whom he had previously conveyed the use, by the older deed. But the registry Acts in effect, say the contrary; they say, as we have seen by the rule deduced from them, that in all cases, the younger deed if duly recorded shall prevail over the older, if the donee in the younger has no notice of the older—that, however, he is to be deemed to have had notice of that deed, if that deed was regularly recorded. They, therefore, say this, in the case in which, what the older deed conveyed was only the use. So far, then, as that case is concerned, they *do* interfere with the statute of uses, and in effect repeal it.

Their precise operation, probably, is this—they do not prevent the first conveyance from passing the legal title out of the vendor into the vendee, in any case; but, in some cases they, nevertheless, impart, to the vendor, the power, the capacity to convey that legal title to a second purchaser; viz, in cases in which, the first conveyance is not duly recorded, and the second is, and in which, the second vendee purchases without notice of the first conveyance; so that, though they may not actually prevent the statute of uses from executing the use, they enable the vendor to defeat the use, after it is executed.

Is the present case, that case? Granting that the present is a case in which Dudley's first deed—the deed to Swift conveyed only the use, yet it is not a case in which the second deed from Dudley—the deed to Hardman, is to prevail over that first deed; for in the first place, the second deed was not recorded at all; and in the second place, Hardman, the donee in it, had, when he accepted it, notice of the first, for, at that time, Swift, or some of those claiming under

Lessee of Dudley and Hardman vs. Bradshaw.

him, was in possession of the land.   Then the present case is *not* that case.

It follows, then, that the registration laws do *not* so interfere with the statute of uses, as to prevent it from executing the use, in the present case; that is, that they do not repeal the part of that statute, which covers this case.

Is there not some other statute that does ?   If there is we are not aware of it.

Let us suppose however that there is.   This supposed, then, the statute of uses will be out of the case, and the question will be, what, that statute out of the case, was the effect of the payment of the grant fee and the taking out of the grant ?   And the answer will be, that the effect was, to cause the legal title, which the State had been holding for the use of Swift ever since Dudley's deed to Swift, to pass out of the State into Dudley, not, to be instantly passed on, by the statute of uses, out of Dudley into Swift, but to remain in Dudley to be held by him for the absolute unconditional use of Swift, until he should be required by Swift, to make to him, Swift, a conveyance of that legal title.   The absolute, unconditional use was in Swift; the mere naked legal title was in Dudley.   This was the effect.   Nothing remained to be done by Swift; he was not bound to reimburse Dudley the grant fee, for his deed from Dudley contained Dudley's warranty of title, and that bound Dudley to pay the grant fee—to remove any incumbrance.   He had the right on mere demand, to a conveyance of the legal title from Dudley.   This being so, we may say that Swift had what this Court has called " a perfect equity."

The effect then of the payment of the grant fee and the taking out of the grant, was, the statute of uses laid out of the case, to give the legal title, to Dudley, and, " a perfect equity," to Swift.   And this is the answer to the second of our two main questions.

A perfect equity is, in Georgia, a good title even at law ; it is a title sufficient to support or to defeat ejectment.   (*Pitts*

vs. *Bullard* 3 *Kelly*; *Peterson vs. Orr*, 12 *Ga.*) This is due probably to the Act of 1820, which says, that if a party "conceives" that he can establish his claim without resorting to the conscience of his adversary, he may sue at law and should not be forced to sue in equity. (*Pr. Dig.* 447.)

Against whom is this perfect equity, good? It is good against the person holding the legal title, and all claiming under him with notice of that equity.

In the present case, therefore, the perfect equity in Swift was good against Dudley who held the legal title, and good against his assignee of that title, Hardman, if Hardman purchased that title with notice of the equity. And that Hardman did do, for when he purchased Swift or some one claiming under Swift was in the possession of the land, and possession is notice at least *prima facie* of the title under which it is held.

Whether, then, the statute of uses is in the case, or out of the case, the result is the same. If it was in the case, it executed the use in Swift, and he, or his assigns, had the legal title, and that title was a good defence to the action; and if it was out of the case, Swift's payment of the purchase money to Dudley, and Dudley's paying the grant fee and taking out the grant, gave Swift, a perfect equity, leaving in Dudley nothing but the naked legal title, and that perfect equity was a good defence to any ejectment brought by Dudley, or, by any one claiming under him, with notice of the equity; and Hardman, the lessor of the plaintiff, in the present ejectment, was a person claiming under him with notice of the equity.

Either way then, we think that the charge was right.

It was suggested by the counsel for the plaintiff in error, that there is a want of harmony in the decisions of this Court, on the questions involved in this case. He especially cited *Bivins vs. Vinsant*, 15 *Ga.* 521, as a case in conflict with *Henderson vs. Hackney*, 24 *Ga.*

If it is in conflict with that case, it is in conflict with the

conclusion to which we have just come, in this case, for that conclusion harmonizes with that case. I must, therefore, notice the suggestion.

In *Bivins vs. Vinsant*, 15 *Ga.* 521, the *decision*, was that the older deed was admissible, and it was a deed made before the issuing of the grant. The *decision*, then is in harmony with the conclusion to which, we have just come; and with the other decisions, as it will be seen. The great question in the case, was, whether the older deed was not an estoppel upon the claimants under the younger deed, estopping them from saying, that the common donor had nothing in the land, when he made the older deed; and the attention of the Court, was chiefly directed to this question. The Court regarded the argument of estoppel, as not well founded, and, therefore, as not sufficient, to authorize the admission of the older deed; but the Court found another argument, for its admission, which it did deem sufficient, and that was an argument founded on this very doctrine, that a complete equity is equal to the legal title. True, the Court failed to advert to the fact that the issuing of the grant to Vinsant, was evidence of the payment of the grant fee, and, therefore, that the case was one of a perfect equity, (one of a use executed by the statute of uses) but the Court did fully sanction the principle, that when a complete equity does exist, it is good in ejectment, whether for offence or defence. The truth is, that this part of the case, was hardly argued at all, almost the whole force of the counsel on both sides, being spent on the question of estoppel.

In *Faircloth vs. Jordan* 18 *Ga.* 350, the Court in like manner recognized the principle, that a perfect equity is equal to the legal title, but the Court thought that the facts did not make out a case of a perfect equity. According to the facts, both deeds were recorded, but the recording of the younger, was in time, the recording of the older, was not in time. And proof was offered, to show, that the donee in the younger deed, had notice of the older deed, when he

took the younger. This Court would now hold that the proof ought to have been received, and then that the facts would have made out a perfect equity, in the donee of the older deed. In this respect, the views of the Court, as to the construction and effects of the registry Acts have undergone a change; a change which, I own, went hard with me. *Hand & Cook vs. McKinney,* 25 *Ga.* 648.

In *Henderson vs. Hackney,* 24 *Ga.* 383, the older deed made before the grant had issued, was duly recorded. Therefore, there was, in the donee in that deed, a perfect equity as against the donee in the younger deed made after the grant had issued. This was the fact, and this will support the decision, although the decision is not expressly put on this, as its ground ; but is rather put, on the ground, that the use in the holder of the older deed, was on the issuing of the grant, executed in time, by the statute of uses.

In *Goodson vs. Beacham,* 24 *Ga.* 151, there was a perfect equity in Beacham. Goodson claimed under her father. He was not a purchaser for a valuable consideration, but a mere squatter; and when she purchased his interest, such as it was, she had actual notice of Beacham's title.

In *Helms vs. O'Bannon,* there was a perfect equity in Helms; and May had notice of it, when he purchased, for when he purchased, Helms was in possession. 26 *Ga.* 132.

In *McLeod vs. Bozeman,* the younger title was merely void. 26 *Ga.* 178.

In these cases, the Court only followed the older cases of *Pitts vs. Bullard,* 2 *Kelly ;* and *Peterson vs. Orr ;* 12 *Ga. R.*

At bottom then there does not seem to be a great want of harmony in the decisions.

Judgment affirmed.