## ROUNTREE *v.* RENTFROE.

1. Where the question was whether a deed made by a married woman was made in consideration of securing her own debt or the debt of her husband, there was no error in allowing the husband to testify that he was the one who borrowed the money.

2. Where, without conflict in any material particular, the evidence showed that the wife made a deed to her own property for the purpose of securing the debt of her husband, in a proceeding to cancel such deed as a cloud upon her title there was no error in directing a verdict in favor of the plaintiff.

JANUARY 21, 1913.

Equitable petition. Before Judge Thomas. Brooks superior court. November 10, 1911.

Mrs. Mary A. Rentfroe filed her petition against S. S. Rountree, for the purpose of canceling a deed made to the defendant in 1905. She alleged that it was made for the purpose of securing an indebtedness of her husband, due to the grantee as surviving partner of Rountree & Company. The defendant denied the substantial allegations of the petition. On the trial the evidence on behalf of the plaintiff showed, in brief, as follows: Rentfroe was indebted to Rountree as surviving partner several hundred dollars. In 1888 he went to Rountree to borrow $265 or $300 more, for the purpose of going into a mercantile business at a certain place. Rountree proposed that he would let Rentfroe have the money if the amount loaned and the past indebtedness were added together and notes were made for the whole, and Rentfroe should get his wife and aunt to sign them with him. This was done and the notes were given. Each of these notes included the statement that certain land was conveyed to secure its payment, with a power of sale on failure of payment. This land had originally belonged to the aunt of Rentfroe, Mrs. Thigpen, but had been conveyed by her to Mrs. Rentfroe by a deed dated 1876, though not recorded until 1891. Rentfroe received every cent of the money advanced, and none of it went to his wife. In 1905 an attorney for Rountree wrote to Mrs. Rentfroe, threatening to sue on the notes if they were not paid. Rentfroe desired more time. He and his wife agreed with Rountree that she would make a deed to the land, and that Rountree would make a bond for title to their son, T. A. Rentfroe, and take his notes for the amount of the indebtedness, payable in installments. The papers were executed accordingly. Mrs. Rentfroe

testified that she understood that the bond for title was to be made to all of her children, and not to T. A. Rentfroe alone. After the papers were executed the family lived on the place as before. The sons of Mr. and Mrs. Rentfroe cultivated the land. No rent was paid to T. A. Rentfroe by the other members of the family, but he received some of the crop. T. A. Rentfroe paid to Rountree a small amount. Afterward he moved away from the land and abandoned the transaction. He gave as his reason that he found the bond for title was only to give him a quitclaim deed.

Rountree's testimony did not materially conflict with that of the plaintiff as to the actual occurrences. He stated in general terms that the consideration of the notes made in 1888 was in part for money which he let Mrs. Thigpen, Mrs. Rentfroe, and Mr. Rentfroe have, and in part the prior indebtedness of Rentfroe. He thought he let them have about $300 at that time. "Mr. Rentfroe had come down and wanted some money, and witness told him that he would loan it to them if they would sign these papers. He thought that some of Rentfroe's accounts were in the notes." He stated that over $300 had been paid on the notes, "may be $400." He did not remember where he had put the credits for the amounts which had been paid, but thought that Rentfroe had paid more than enough to pay his individual debt. "In 1905 he had some inkling about Mrs. Rentfroe wanting to claim the land; he turned over the note to Mr. Bennett to sue; he supposed that Bennett had notified them; anyhow, Mrs. Rentfroe and Rentfroe came to see him, and he did just what they asked him to do; they asked him to take T. A. Rentfroe's notes for the amount they were owing to him, and give them four or five years." He never commenced any lawsuit, but still retained the original notes. When asked, "What became of that money?" he answered, "Mr. Rentfroe went in business in Dixie with it; did not know whether Rentfroe got the money then or not; didn't think he did; witness did not know who the land belonged to; did not know whose property it was." On cross-examination he testified as follows: "Mr. Rentfroe came to see witness first in regard to borrowing the $300; thought Mr. Rentfroe told him he wanted this money to go in business at Dixie; could not state positively about that. Rentfroe came before Mrs. Thigpen and Mrs. Rentfroe came. He did not think he paid the money to Mrs. Rentfroe. Rentfroe came first to borrow the money,

and witness thinks he was going into business, but could not state positively."

At the close of the evidence, the presiding judge directed a verdict in favor of the plaintiff. The defendant excepted.

*Bennet, Long & Harrell,* for plaintiff in error.

*J. G. & J. F. McCall,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. In giving the history of the transaction, and showing who negotiated with Rountree in respect of the loan, and for whose benefit it was made, there was no error in allowing Rentfroe, the husband, to testify that he was the one who borrowed the money from Rountree. The objection made to this evidence was that it was irrelevant, and that the question was to whom Rountree extended the credit, and who signed the notes. But the evidence was not subject to this objection.

2. In *Schofield* v. *Jones,* 85 *Ga.* 816 (11 S. E. 1032), it was held, that husband and wife may become joint lessees of a house in which to carry on a hotel business, contract jointly to pay the rent, and execute joint promissory notes therefor; and that, where such is not merely the outward color but the real truth of the transaction, the debt for rent is the debt of the wife as well as the husband. In the opinion Chief Justice Bleckley said: "The true test of the real debtor or debtors is, to whom did the consideration pass? *King* v. *Thompson,* 59 *Ga.* 380. If it passed to one of them severally, that one alone is the debtor; but if to both jointly, then consistency requires that they should be held as joint debtors, they having united in executing a joint agreement and assuming a joint obligation to pay." It has also been held that a married woman may voluntarily, upon her own responsibility and in good faith, borrow money for the purpose of paying a debt of her husband and give her notes therefor, and that such a contract will be binding upon her although the lender may know, at the time the loan is made, that she is borrowing for that purpose, if he is not the husband's creditor who is to be thus paid, and is no party to any arrangement or scheme between the husband and wife for which the borrowing of the money by her for such purpose is the outcome. *Rood* v. *Wright,* 124 *Ga.* 849 (53 S. E. 390).

In the present case the evidence showed, without controversy, that the husband owed a debt, and applied to his creditor for the

loan of an additional sum in order that he might go into a commercial venture for himself; that his creditor agreed to make the loan if the amount of the original debt and of the new loan should be included in notes signed by him, his wife, and another; that this was done upon the creditor's suggestion and with full knowledge as to the purpose for which the loan was to be used; and that the money was received by the husband and used in his business, and nothing was received by the wife. While the creditor testified in general terms that he loaned the money to the signers of the notes, when he gave the facts of the transaction his evidence did not conflict in any material particular with that on behalf of the plaintiff. From the whole evidence it is plain beyond controversy that the debt was that of the husband, and that the arrangement was made at the instance of the creditor for the purpose of securing payment to him.

In *Thornton* v. *Lemon, McMillan & Co.,* 114 *Ga.* 155 (39 S. E. 943), it was held that where a promissory note was executed and delivered by a married woman for the purpose of settling a pending suit against her and her husband, wherein the plaintiff alleged that both were liable, the consideration being, not the husband's debt, but the settlement of the litigation, the note was collectible. In the present case there was no lawsuit and no compromise. The bare statement that the creditor placed the note in the hands of an attorney, who notified the husband and wife, and they asked of the creditor an extension of time, did not make the ruling above cited applicable. The facts were more nearly like those in *First National Bank of Cartersville* v. *Bayless,* 96 *Ga.* 684 (23 S. E. 851), where it was held that a mortgage given by a wife upon her own property in settlement of a debt of her husband was not binding upon her, although she may have given the mortgage under the impression that the creditor holding the debt could for some reason subject the property in question to its payment, and intended by giving the mortgage to effect a compromise of what she regarded as a doubtful claim against the property. The case of *Blackburn* v. *Lee,* 137 *Ga.* 265 (73 S. E. 1), was cited by counsel for the plaintiff in error. There a married woman conveyed land to her son, upon a recited consideration of a thousand dollars. Later the grantee and the husband of the creditor executed a deed to secure certain promissory notes signed by them. After a sale

under a power contained in the deed, at which sale the creditor became the purchaser, as the deed authorized, the woman brought suit to recover the land, alleging that the conveyance by her to her son and the making of the security deed constituted a mere scheme to avoid the statute which prevented her from becoming surety, and that the agent of the defendant knew it. There was evidence tending to sustain this contention. The judge directed a verdict for the defendants, and it was held that the case should have been submitted to the jury. The difference in the two cases is patent. Here the entire consideration of the deed from the wife was based upon the debt of the husband. The bare fact that the creditor stated that he thought enough had been paid to discharge the individual debt of the husband which originally existed would not save the transaction. This was not a suit by the creditor, based upon the notes, but a proceeding to cancel the deed of the wife. The exact amount of the original debt and of the payment was not shown, so as to clearly purge the deed of the consideration arising from that source. But, more broadly, we think it was plain that the entire debt was that of the husband, and that there was no error in directing a verdict in favor of the wife. No question was raised as to the propriety of making the son a party, and he testified, in effect, that he had abandoned the transaction.

*Judgment affirmed. All the Justices concur.*