## SIKES *v.* SECKINGER.

1. A donee of land under a parol gift, based upon a meritorious consideration, who, with the consent of the donor, enters into possession and makes valuable improvements upon the faith of the gift, acquires a perfect equity as against the donor, his heirs, and those claiming under him with notice.

Cancellation of Instruments, 9 C. J. p. 1223, n. 59; p. 1224, n. 71.
Deeds, 18 C. J. p. 404, n. 32.
Ejectment, 19 C. J. p. 1059, n. 57, 59, 60.
Estoppel, 21 C. J. p. 1173, n. 86; p. 1229, n. 70.
Executions, 23 C. J. p. 759, 31; p. 761, n. 63, 73 New.
Gifts, 28 C. J. p. 644, n. 88; p. 649, n. 61; p. 675, n. 11; p. 680, n. 70, 73, 74.
Husband and Wife, 30, C. J. p. 937, n. 40; p. 940, n. 99.
Landlord and Tenant, 35 C. J. p. 1212, n. 3.
Specific Performance, 36 Cyc. p. 681, n. 95, 97, 98, 99.
Trial, 38 Cyc. p. 1567, n. 95; p. 1578, n. 40.
Vendor and Purchaser, 39 Cyc. p. 1756, n. 47; p. 1758, n. 55.

(a) Such perfect equity in the donee, with a subsequent deed from the donor to the donee, will support an action of ejectment.

(b) Where the donee was the daughter-in-law of the donor, and where, after the gift had become complete by her entry into possession and the making of valuable improvements upon the land upon the faith of the gift, the mother-in-law, before making a deed to the daughter-in-law, conveyed the land to her son, who was the husband of the donee, the daughter-in-law could have maintained an equitable petition for specific performance against the mother-in-law, and to have the deed made by the mother-in-law to the son cancelled, the son taking his deed with knowledge of the prior gift of his mother to his wife.

(c) Parties can voluntarily do what equity will compel them to do; and equity will not entertain a bill for specific performance when the parties have already performed what they ought to have done.

(d) Upon proof of the gift of this land by the donor to the donee, possession thereof by the donee with the consent of the donor, and the making thereon of valuable improvements upon the faith of the gift, was proper to establish in the plaintiff a perfect equity and to account for the subsequent execution of a deed by the donor to the donee to effectuate such gift.

2. Upon proof of the gift of this land by the mother-in-law to the daughter-in-law, possession thereof by the donee with the consent of the donor, the erection thereon of valuable improvements by the donee, and the subsequent execution of a deed by the donor to the donee, which was made with the consent and at the request of the donee's husband, the donee acquired a legal title to the land.

(a) Where the husband of the donee, who was the son of the donor, after receiving his deed from the donor, requested the latter to execute a deed to his wife, which was attested by two witnesses, one of whom was a notary public, and where the husband signed the attestation clause of the deed under the signatures of the attesting witnesses, the son and those claiming under him would be estopped from asserting that the wife acquired no title under the deed to her from her mother-in-law, although such deed might not operate to convey to the donee whatever title the son had in the land.

3. If one having title to land sells and conveys the same by deed to another, he can not thereafter by his deed convey to a subsequent purchaser any title thereto.

(a) After the making of a parol gift of land to a donee who went into possession with the consent of the donor, and on the faith of the gift made valuable improvements on the land, the gift thereby became complete, the donee thereby acquired a perfect equity in the land, and the donor could not thereafter revoke the gift and convey the land to another, for the reason that she had no title to or interest in the land which she could then convey.

4. Where the land, after the making of the deed from the donor to the donee, was levied upon under execution against the husband of the donee, and where the donee filed a claim to the land so levied on, the dismissal of her claim by the donee would not estop her from asserting

7

title to the land where it was afterwards sold at sheriff's sale under the executions so levied.

5. If after the sheriff's sale the wife executed to the purchaser her quitclaim deed to the land in order to enable him to sell the land for the purpose of paying the debts of her husband, such quitclaim deed was void, and would not estop the wife from asserting her title to the land against such purchaser and those claiming under him with notice of the wife's title.

6. Possession of land is notice of whatever title or right the occupant has.

(*a*) Possession of land by a tenant is the possession of the landlord.

(*b*) So if, at the time of the sheriff's sale, and at the time when those claiming under the purchaser at such sale obtained their conveyances, the wife was in possession of this land, either by herself or by her tenants, such possession was notice to such purchaser, and those claiming under him, of whatever right or title the wife had to this land.

7. The court erred in directing a verdict for the defendant, issues of fact being involved which could only be determined by a jury.

No. 5526.    APRIL 15, 1927.

Complaint for land. Before Judge Sheppard. Tattnall superior court. May 3, 1926.

Mrs. Sidney M. Sikes, on March 30, 1925, brought her complaint against J. B. Seckinger, for the recovery of a described tract of land and mesne profits. In her petition she alleges that she attaches thereto "an abstract of her title on which she relies for a recovery." This abstract refers only to a deed from Victoria E. Sikes to the plaintiff, dated August 30, 1900, and sets up actual possession of the premises in dispute by the plaintiff under said deed since its date. In his answer the defendant denied that the plaintiff had title to the land, and her possession thereof. He alleged that he had title thereto. On the trial the plaintiff introduced the deed to herself from her mother-in-law, Victoria E. Sikes, above referred to, which was witnessed by her husband, J. P. R. Sikes, and by two other witnesses, one of whom was a notary public. The husband signed under the attestation clause, and beneath the signatures of the said two attesting witnesses. This deed recites a consideration of $5 and love and affection for the grantee. It was recorded on June 21, 1901. It embraces the premises in dispute. Plaintiff introduced oral testimony tending to establish the following facts: She and J. P. R. Sikes were married on July 4, 1896. On the following Wednesday, Victoria E. Sikes, the mother of J. P. R. Sikes, and the plaintiff visited Fletcher Sikes. On their return Victoria E. Sikes said to plaintiff "Let's go by; I want to show you your home." The husband of plaintiff

was not with them. They went by the premises in dispute and Victoria Sikes showed the plaintiff the lines around the premises and said to her, "This is your home, and I am going to give it to you, and I am going to make the deeds to you, and I want you to take care of it and raise the children on it." Mrs. Sikes did not then make a deed to the plaintiff. Afterwards she said to the plaintiff, "I am going to make the deed," and the husband said, "Mother, make it to me." Thereupon she executed the deed to the husband on March 13, 1900, and turned it over to the plaintiff, who accepted and kept it for him. On August 30, 1900, the mother, with the approval of the husband, made to the plaintiff the deed under which she claims the premises in dispute. The husband then told the wife to burn the deed which his mother had made to him.

Plaintiff and her husband, under the above promise of his mother to the plaintiff, moved on these premises in January, 1897. Before they did so the husband had the frame of the dwelling-house up and one room finished. They finished the dwelling after they moved in. They put upon the premises, before March 13, 1900, permanent and valuable improvements. The character and cost of these improvements are set out in the testimony of plaintiff. These improvements were put upon the place by the husband and those working for him, and from the proceeds of crops grown on the place. Plaintiff and her husband made these crops. She helped her husband in clearing the land. Plaintiff supervised the work of making the improvements on the land. The workers who helped her husband in making these improvements were paid out of the proceeds of the crops grown on the place. Plaintiff paid Victoria E. Sikes the $5 mentioned as a part of the consideration in the deed under which plaintiff claims title to these premises. Before the husband received his deed, some of the improvements had been put upon this land. Some were made after he received his deed from his mother, and some were made after the plaintiff got her deed to the premises. In 1907 plaintiff borrowed from the John Hancock Life Insurance Company $1250, and secured its payment by a deed to this land. In 1912 executions against the husband were levied on this land. The wife filed a claim thereto. On the trial she withdrew this claim. This land was afterwards sold by the sheriff as the husband's property,

on the first Tuesday in 1917, to Mike Edwards. It does not appear whether the land was sold under the executions against the husband, which were levied in 1912. Thereafter, on January 6, 1917, the wife made to Edwards a quitclaim deed to this land. She and her husband continued in possession of the land from 1917 to January, 1923, when she rented the same to Pharicy Jenkins. She testified that she made this quitclaim deed to Edwards for the purpose of enabling him to pay the debts of her husband. Edwards then made a deed to Lucius Sikes, her husband's brother, and Lucius Sikes made a deed to the husband, who afterwards procured a loan thereon. The plaintiff did not know of these transactions until after they had been completed.

The husband, on October 23, 1923, conveyed the premises to the defendant. None of these deeds were introduced in evidence, but the plaintiff testified to the making of them. The plaintiff and her husband lived on these premises from January, 1897, until 1924, with the exception of two or three years, when they lived in Glennville. She was living on this land at the time of the sheriff's sale to Edwards, and when the latter sold to L. G. Sikes. Plaintiff rented this land to Pharicy Jenkins for the year 1923. The defendant rented it to Jim Futch for the year 1924. Futch wanted to get possession of this land before January 1, 1924, and in November or December paid Pharicy Jenkins five or ten dollars to surrender possession to him, which was done. Plaintiff testified that she did not know that her husband was going to sell this place to the defendant. Her husband, on April 25, 1924, and some time before his death, told her that he had sold it to the defendant. It was in either November or December, 1923, that Jim Futch had gone on the place. The defendant paid to the husband on the purchase-money of this place $600 cash, gave four notes of $600 each, and assumed a debt on the place of $2000. When the husband died one of these notes was found in his trunk, and the plaintiff took possession of it. Before bringing suit the plaintiff offered to give this note back to the defendant. This note was dated February 7, 1923, and was due August 15, 1926. It is signed by C. R. Sikes, payable to the order of J. P. R. Sikes, and indorsed by the defendant. The plaintiff has seen the other notes in her husband's possession. She never received any of the purchase-money paid by the defendant to her husband for this

land. At the time the mother made the deed to this land to her son she said she wanted to make it to the plaintiff. The value of the land for mesne profits was shown. S. J. Kicklighter, in behalf of the defendant, testified that he had leased from the husband of the plaintiff, in the fall of 1922, the turpentine boxes on the land in dispute, for four years, but the husband of plaintiff was living on the place at the time, and the plaintiff raised no objection to this transaction.

The court directed a verdict for the defendant. The plaintiff made a motion for new trial upon the general grounds. By an amendment to her motion she added two grounds. In the first of these she complains that the court erred in refusing to allow her to testify that she made a quitclaim deed to Mike Edwards, to enable him to dispose of the property to pay her husband's debts, and that Edwards was to make her back a bond for title to that portion of it constituting the land now in dispute; that Edwards said he did not have a blank bond, that he was in a hurry to go, and promised to send her the bond for title but never did, that he would stand between plaintiff and all trouble, as he knew it would not take but just a part of the land to pay off the debts, "said that if I would trust him to attend to it he would give me his bond for title and that as quick as he got the debts paid off he would make the deed back to me, but he did not do it;" and that she still stayed in possession of it. Counsel for the defendant objected to this testimony on the ground that it was engrafting on the deed an oral condition which would not bind a bona fide purchaser. The court sustained the objection and rejected this testimony. In the second special ground the plaintiff sets up the material facts in her proof upon which she based her right to recover in this case, and alleges that at the conclusion of the evidence counsel for the defendant moved the court to direct a verdict for the defendant under the pleadings and evidence, which the court did, and thereupon entered up judgment against the plaintiff. To this ruling of the court in directing a verdict for the defendant and entering up judgment against the plaintiff on such verdict, the plaintiff excepts, and says that the court erred in directing said verdict and entering up said judgment thereon, as the same is against the evidence and is without law or evidence to sustain the same, but on the contrary plaintiff contends that

a verdict, if directed at all, should have been directed in her favor and against the defendant. Upon this ruling she assigns error. The court overruled the motion for new trial, and the plaintiff excepted.

*W. T. Burkhalter,* for plaintiff.

*J. T. Grice* and *C. L. Cowart,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. A donee of land under a parol gift based upon a meritorious consideration, who, with the consent of the donor, enters into possession and makes valuable improvements upon the faith of the gift, acquires a perfect equity as against the donor, his heirs and those claiming under him with notice. *Floyd* v. *Floyd,* 97 *Ga.* 124 (24 S. E. 451); *Looney* v. *Watson,* 97 *Ga.* 235 (22 S. E. 935); *Ogden* v. *Dodge County,* 97 *Ga.* 461 (25 S. E. 321); *Garbutt* v. *Mayo;* 128 *Ga.* 269 (2) (57 S. E. 495, 13 L. R. A. (N. S.) 58). It is now well settled that in such circumstances the donee can defend an action of ejectment by proof of such perfect equity. *Vanduzer* v. *Christian,* 30 *Ga.* 336; *Floyd* v. *Floyd, Looney* v. *Watson, Ogden* v. *Dodge County,* supra. Can a donee in such circumstances maintain an action of ejectment upon proof of such perfect equity?

The purchase of land, full payment of the purchase-money, and possession, create a perfect equity, which is good against the vendor, his heirs and those claiming under him with notice, is equivalent to legal title, and will support an action of ejectment by the purchaser. *Pitts* v. *Bullard,* 3 *Ga.* 5 (46 Am. D. 405); *Dowdell* v. *Veal,* 10 *Ga.* 148; *Winter* v. *Jones,* 10 *Ga.* 190 (54 Am. D. 379); *Peterson* v. *Orr,* 12 *Ga.* 464 (58 Am. D. 484); *Wilkinson* v. *Chew,* 54 *Ga.* 602; *Grace* v. *Means,* 129 *Ga.* 638 (59 S. E. 811); *Mays* v. *Redman,* 134 *Ga.* 870 (68 S. E. 738); *Lee* v. *Pearson,* 138 *Ga.* 646 (5) (75 S. E. 1051); *Wall* v. *L. & N. R. Co.,* 143 *Ga.* 417 (85 S. E. 325); *May* v. *Sorrell,* 153 *Ga.* 47, 53 (111 S. E. 810); *Elrod* v. *Bagley,* 154 *Ga.* 670 (115 S. E. 3); *Citizens Mercantile Co.* v. *Easom,* 158 *Ga.* 604, 610 (123 S. E. 883, 37 A. L. R. 378). "The distinction between a legal and an equitable title consists in the payment or non-payment of the purchase-money." *Peterson* v. *Orr,* supra. This court has held that where the grantee of a lot of land sold the same and made a deed thereto before the grant issued from the State, and then, after the grant issued, sold the

same to another person and made a deed to the latter, the first deed took precedence over the second. *Bivins* v. *Vinzant*, 15 *Ga.* 521; *Henderson* v. *Hackney*, 23 *Ga.* 383 (68 Am. D. 529); *Helms* v. *O'Bannon*, 26 *Ga.* 132; *McLeod* v. *Bozeman*, 26 *Ga.* 177; *Dudley* v. *Bradshaw*, 29 *Ga.* 17; *Moore* v. *Coulter*, 31 *Ga.* 278; *Clements* v. *Wheeler*, 62 *Ga.* 53, 57; *Bank of Cumming* v. *Waldrip*, 151 *Ga.* 328 (106 S. E. 546). In *Dudley* v. *Bradshaw*, supra, it was said that "A perfect equity is, in Georgia, a good title even at law; it is a title sufficient to support or defeat ejectment." In *Bivins* v. *Vinzant*, supra, this court made this ruling: "Before grant, the drawer of a lot of land makes a deed for the lot to A; after grant he makes a deed to B. Ejectment is brought by B against A. *Held*, that A's deed, though not sufficient, by its priority in date, to estop B, is yet *admissible* in evidence for A; since it is a deed fit to help establish in A a title perfect in equity.

Where a vendor, having no title to land, sells the same to another, with warranty, but afterwards acquires the title, such title inures to the benefit of the vendee and vests in him complete title the moment the vendor acquires it. *Goodson* v. *Beacham*, 24 *Ga.* 150; *Parker* v. *Jones*, 57 *Ga.* 204; *Terry* v. *Rodahan*, 79 *Ga.* 278, 292 (5 S. E. 38, 11 Am. St. R. 420); *Lathrop* v. *White*, 81 *Ga.* 29, 35 (6 S. E. 834); *Hill* v. *O'Bryan*, 104 *Ga.* 137 (30 S. E. 996); *Oliver* v. *Holt*, 141 *Ga.* 126 (80 S. E. 630). So in *Hadaway* v. *Smedley*, 119 *Ga.* 264 (46 S. E. 96), it was held: "Where a father in possession of land under a bond for titles, a part of the purchase-money being paid, makes a parol gift of the land to a son, and the latter goes into possession and, on the faith of the gift, makes valuable improvements on the land, and subsequently the father acquires the legal title by a conveyance from the maker of the bond for titles, the title thus acquired by the father passes, by the statute of uses, into the son and inures to his benefit in preference to one to whom the father conveyed after he had acquired the legal title." The theory upon which the doctrine rests, that the vendee upon the payment of the full purchase-money acquires a perfect title, which is the equivalent of legal title, upon which he can recover in ejectment, is, that the vendor is a mere naked trustee, holding the title for the benefit of the vendee, which, under the statute of uses, passes to the latter. In *Ellis* v. *Dasher*, 101 *Ga.* 5 (29 S. E. 268), this

court held that "Prior possession of land under a claim of ownership is prima facie evidence of title in the occupant, upon which he may recover in ejectment, unless the defendant shows a better adverse title, by possession or otherwise. Such claim of ownership, if bona fide, may be supported by proof of a parol gift from another and entry thereunder even where such entry was not made until after the donor's death, and although it does not affirmatively appear that the donor had ever been in possession of, or had title to, the property. Such a gift would not pass title to the donee, but it could nevertheless be made the basis of an honest possession by the latter, accompanied by a bona fide claim of right, which could in time ripen into a perfect title." Under the ruling in that case, the plaintiff made a case which would entitle her to recover; but it is difficult to reconcile the ruling in that case with other decisions made by this court. In *Hughes* v. *Clark,* 67 *Ga.* 19, this court held that a claim by the administrator of a deceased donee, whose right rested on a parol gift from his father, followed by valuable improvements made by the son, could not be asserted against a fi. fa. for year's support for the father's widow and minor children, upon the ground that legal title had not vested in the son, but only a perfect equity, which could only be asserted in a court of equity. Afterwards the proper proceeding was instituted, and a decree was had for specific performance, under which the title of the son was held superior to that of the father. *Hughes* v. *Hughes,* 72 *Ga.* 173. In *Howell* v. *Ellsberry,* 79 *Ga.* 475 (5 S. E. 96), this court held that in the case of gift of land by father to son, made without writing, with valuable improvements made by the son upon the faith of the gift, a decree of specific performance was necessary to pass the legal title so as to recover thereon in ejectment or complaint for land, brought by the heir at law of the donee against a subsequent purchaser from the donor, with general warranty of title. In that case Judge Bleckley said: "But the doctrine of perfect equity as the equivalent of legal title is, so far as we know, restricted to the relation of vendor and purchaser." He further said: "A complete equity arises out of payment of purchase-money and the like, out of a consideration beneficial to the former owner, to him who parts with title, not to him who acquires it. It looks to what has been done for another, not to what one has done for him-

self by inducement of another." In *Roberts* v. *Mullinder,* 94 *Ga.* 493 (20 S. E. 350), this court held that a stepgranddaughter had no title by reason merely of a parol gift of the land to her by her stepgrandfather, and the making of valuable improvements thereon, which she could assert in a claim case. The ruling in *Howell* v. *Ellsberry,* supra, was followed in *Thomas* v. *Walker,* 115 *Ga.* 11 (41 S. E. 269). In *Bell* v. *Mention,* 152 *Ga.* 625 (110 S. E. 883), this court held that a gift of land by a father to a son, who went into possession with the consent of his father, and made valuable improvements thereon upon the faith of the gift, did not give to the son a perfect title upon which the son could recover in ejectment.

It is difficult to reconcile the rulings in *Hughes* v. *Clark, Howell* v. *Ellsberry, Roberts* v. *Mullinder, Thomas* v. *Walker,* and *Bell* v. *Mention,* and the ruling in *Ellis* v. *Dasher.* It is likewise difficult to understand why a perfect equity, which springs out of the relation of vendor and vendee, will support an action of ejectment brought by the vendee, and that a perfect equity, springing out of the relation of donor and donee, will not support such action. Upon reason and principle it would seem that all perfect equities should have the same force and effect; and that if a perfect equity arising out of the relation of vendor and vendee will support an action in ejectment, a perfect equity springing out of the relation of donor and donee would likewise support such action. But clearly, a perfect equity in the donee, with a deed from the donor to the former, would support an action of ejectment. If in the case at bar the mother-in-law gave to her daughter-in-law the land in dispute; and if the daughter-in-law took possession with consent of the donor, and made valuable improvements upon the land, the daughter-in-law was entitled to maintain an equitable petition for specific performance by the mother-in-law, and to have the deed made by the former to her son cancelled, the son taking his deed with knowledge of the prior gift of his mother to the daughter-in-law. *Hardaway* v. *Smedley,* supra. Parties can voluntarily do what equity will compel them to do; and equity will not force parties to litigate in order to have done what they ought to do, when they have already performed. Civil Code (1910), § 4532. So proof of the gift of this land by Victoria E. Sikes to the plaintiff, possession thereof by the plaintiff with the

knowledge of the donor, and the making thereon of valuable improvements upon the faith of the gift, was proper to establish in the plaintiff a perfect equity, and to account for the subsequent execution of a deed by the donor to the plaintiff to effectuate such gift. Such proof made a case which would entitle plaintiff to recover, unless the defendant made some valid defense which would defeat her recovery. Under the evidence the jury was authorized to find the making of such gift, the possession of the land by the plaintiff and her husband with the consent of the donor, the erection thereon by the plaintiff and her husband, upon the faith of such gift, of valuable permanent improvements, and the subsequent execution by the donor to the plaintiff of a deed to this land, at the request of the husband, to effectuate the gift. The evidence introduced upon this issue should have been submitted to the jury, and the court erred in directing a verdict for the defendant, unless the latter succeeded in making some defense which would defeat the right of the plaintiff to recover. If the improvements were in fact made by the husband, but for the wife, they would stand upon the same footing as if made by the wife. *Walker* v. *Neil,* 117 *Ga.* 733 (9) (45 S. E. 387).

2. Under the evidence the jury was authorized to find that the plaintiff and J. P. R. Sikes were married on July 4, 1896; that on the following Wednesday Victoria E. Sikes, the mother of J. P. R. Sikes, took the plaintiff to the land in dispute, and said to her, "This is your home, and I am going to give it to you, and I am going to make the deeds to you;" that the plaintiff and her husband lived with the latter's parents until January, 1897; that, in the interval between their marriage and January, 1897, the husband of the plaintiff, on the faith of his mother's gift of this land to his wife, erected a frame of a dwelling on this land, one room of which was finished and made habitable by January, 1897; that in January, 1897, the plaintiff and her husband went into possession of the land in dispute, occupying the room which had been finished in the dwelling previously erected thereon; that the plaintiff and her husband took possession with the consent of Victoria E. Sikes, and in pursuance of her gift to the plaintiff; that thereafter, on the faith of this gift by the mother-in-law to her, the plaintiff and her husband acting for

her, made valuable improvements upon this land; that on March 13, 1900, the donor said to the plaintiff that she was going to make to her a deed to this land, when the plaintiff's husband requested his mother to make the deed to him, which she then did; that on August 30, 1900, the donor, at the request of plaintiff's husband, and in fulfillment of the oral gift of this land to plaintiff, executed and delivered to the latter a deed to this land, which was recorded on June 21, 1901; that this deed recites a consideration of $5, which was actually paid by the plaintiff, and natural love and affection which the grantor bore to the grantee; that this deed was attested by two witnesses, one of whom was a notary public, and that the husband signed the attestation clause under the signatures of said attesting witnesses; that plaintiff's husband told her to burn the deed which his mother had made to him, and which had not been recorded at that time, but was afterwards recorded in 1910; and that the plaintiff and her husband lived on this land for a period of twenty-eight years, the wife claiming the same under the deed to her. In these circumstances, the plaintiff acquired a legal title to this land. The deed from her mother-in-law to plaintiff, made at the request of plaintiff's husband, and signed by him to attest its execution and signifying his approval of the conveyance, was in effect his deed, and conveyed to the wife whatever title he had under the previous deed from his mother to him. As the deed was attested by two witnesses other than the husband, which rendered his signature as a witness unnecessary, it may well be assumed, in the absence of proof to the contrary, that he signed it, not as a mere attesting witness, but for the purpose of joining in the execution of the instrument.

But if this deed was not in effect the conveyance of whatever title the husband had in this land, he, and those claiming under him, are estopped from asserting that the wife acquired no title under the deed to her from her mother-in-law. It is true that estoppel conveys no title. *Sheppard* v. *Reese,* 114 *Ga.* 411 (40 S. E. 282); *Bussey* v. *Bussey,* 157 *Ga.* 648 (121 S. E. 821); *Peacock* v. *Horne,* 159 *Ga.* 707 (126 S. E. 813). But while this is so, a party and his privies in estate may be estopped from denying the title of a vendee under a conveyance which of itself would be ineffectual to pass the title of the party estopped.

Where one attests a deed with full knowledge of its contents, he is estopped from asserting against the grantee therein an interest based upon any right then, outstanding in himself. *Butt* v. *Maddox,* 7 *Ga.* 495 (4), 504; *Georgia Pacific Ry. Co.* v. *Strickland,* 80 *Ga.* 776 (6 S. E. 27, 12 Am. St. R. 282) ; *Fleming* v. *Ray,* 86 *Ga.* 533 (12 S. E. 944). It is true that in such a case the vendee must be ignorant of the title of the subscribing witness. Where one as agent of another signs a deed conveying property, he is estopped from thereafter asserting against the grantee any adverse right based on a title or interest subsisting in such agent at the time of the execution of the deed. *American Freehold &c. Co.* v. *Walker,* 119 *Ga.* 341 (46 S. E. 426). A deed conveying land, executed in the name of the ostensible makers, but not in their presence, by a person authorized by them verbally, is invalid, but will pass the title in favor of those who act upon it in a way to be prejudiced, should the authority to make it be revoked. As to such persons, after they have parted with their money on the faith of the deed, the ostensible makers will be estopped from denying the authority of the person who, with their consent, subscribed their names to the instrument. *McCalla* v. *American Freehold &c. Co.,* 90 *Ga.* 113 (15 S. E. 687). Where the owner of land executes a formal disclaimer of title thereto, and permits another to sell it to a third person, such disclaimer being attached to the deed under which such land is sold, and on the strength of which disclaimer the vendee buys and accepts title, the maker of such disclaimer and his privies will be estopped from afterwards asserting title to the property so conveyed. *Caraker* v. *Brown,* 152 *Ga.* 677 (111 S. E. 51). Writings which on their face are not sufficient to operate as a deed or conveyance of land, and to take the transaction out of the statute of frauds, may constitute an equitable estoppel. *Peacock* v. *Horne,* 159 *Ga.* 707 (126 S. E. 813). So in this case, when the mother of plaintiff's husband pointed out the land in dispute to the plaintiff, and told her that it was her home, and that she would give the land to the wife and make her a deed to it, and where thereafter the mother put the wife in possession of the land upon which the husband erected permanent and valuable improvements, and where, after the erection of such improvements the mother made a deed to the husband, and where thereafter, at the request of the hus-

band, his mother conveyed by deed the land to his wife, for a consideration which was partly valuable and partly good, the wife actually paying the valuable portion of the consideration, although small, and where the husband signed the deed beneath the signatures of the two attesting witnesses and under the attestation clause, the wife in these circumstances acquired the legal title to the land. But if the conveyance of the mother to the wife was ineffectual to convey the title of the son, in these circumstances the son will be estopped to deny the title of the wife to this land under her deed from his mother.

3. It is contended by counsel for the defendant that when Victoria E. Sikes conveyed the land by deed to her son on March 13, 1900, she had no further title to or interest in this land which she could afterwards convey to the plaintiff. Generally, a grantor can not convey any greater title or estate than he has. If one having the title to land sells and conveys the same by deed to another, he can not thereafter by his deed convey to a subsequent purchaser any title thereto. The mere surrender or cancellation of a deed will not divest the title to land which has once been conveyed and vested by transmutation of possession. *Jordan* v. *Pollock,* 14 *Ga.* 145; *Holder* v. *Scarborough,* 119 *Ga.* 256 (46 S. E. 93); *Warren* v. *Ash,* 129 *Ga.* 329 (58 S. E. 858); *King* v. *McDuffie,* 144 *Ga.* 318 (87 S. E. 22); *Drew* v. *Drew,* 146 *Ga.* 479 (91 S. E. 541); *Padgett* v. *Norrell,* 157 *Ga.* 526 (122 S. E. 65). The application of this principle in this case cuts both ways. If the mother-in-law made a parol gift of this land to the plaintiff, and the latter went into possession, and on the faith of the gift made valuable improvements on the land, the gift thereby became complete; the plaintiff thereby acquired a perfect equity in this land, and the donor could not thereafter revoke the gift and convey the land to her son, for the reason that she had no title to or interest in the land which she could then convey. *Hardaway* v. *Smedley,* supra. Of course the situation would be different if the mother-in-law had not made a parol gift of this land to the plaintiff, which had become complete by her possession and the erection of valuable improvements on the land, before she conveyed the land to her son. In such circumstances the mother would have no title to or interest in this land after she had conveyed it to her son, and for this reason could

convey no title to the plaintiff subsequently to the execution and delivery of the deed to her son.

4.  The deed from the mother to the son was recorded in 1910. In 1912, executions issued upon judgments obtained against the husband were levied upon this land. Subsequently, the wife interposed her claim thereto. Upon the trial of these claims, and after some ruling adverse to her, the claimant dismissed the same. Thereafter, and while the wife was in possession, the land was sold at sheriff's sale under the same or other executions against the husband. It is now insisted by the defendant that under these facts the wife is estopped from asserting title to this land against the purchaser at the sheriff's sale and those claiming under him. We do not think this contention is well taken. The wife, under these circumstances, is not estopped from seeking in ejectment to recover the land from a person who claims title thereto under the purchaser at the sheriff's sale, she, at the time of said sale, being in possession of the land under the deed to her from her mother-in-law, which had been previously recorded.

5.  After the sheriff's sale, the wife executed and delivered to the purchaser at such sale a quitclaim deed to this land. The defendant contends that the wife is now estopped, by virtue of the quitclaim deed, from asserting title to this land. In reply to this contention the wife alleges that she made such quitclaim deed to said purchaser in order to enable him to sell the land and pay the debts of her husband. A wife can not sell her land in extinguishment of her husband's debts, whether the conveyance be made directly to a creditor, or to a third person for the purpose of selling her land and applying the proceeds to the extinguishment of the debts of her husband. Civil Code (1910), §§ 2993, 3007; *Webb* v. *Harris,* 124 *Ga.* 723 (53 S. E. 247); *Gross* v. *Whitely,* 128 *Ga.* 79 (57 S. E. 94); *Rountree* v. *Rentfroe,* 139 *Ga.* 290 (77 S. E. 23); *Jackson* v. *Reeves,* 156 *Ga.* 802 (120 S. E. 541); *Frommel* v. *Cox,* 158 *Ga.* 310 (123 S. E. 296); *Reeves* v. *Jackson,* 158 *Ga.* 676 (124 S. E. 135); *Lee* v. *Johnston,* 162 *Ga.* 560 (2 *a*) (134 S. E. 166). So if the wife by this quitclaim deed conveyed this land to another, under a scheme by which such person was to sell the same, or so much thereof as might be necessary, and apply the proceeds to the extinguishment of the debts of her husband, such quitclaim deed was null and

void, and persons acquiring title to the land under the grantee in such quitclaim deed, with notice, acquired no title against the wife. It follows that the court erred in rejecting evidence offered by the plaintiff to establish the fact that such quitclaim deed was made by her to the grantee therein for the purpose of paying her husband's debts.

6. Possession of land is notice of whatever right or title the occupant has. Civil Code (1910), § 4528. The record of the deed from Victoria E. Sikes to the plaintiff was constructive notice of the wife's title to a purchaser of the land at the sheriff's sale, and those claiming under him. Possession of land may be held by a tenant. *McMullin* v. *Erwin*, 58 *Ga.* 427; *Knorr* v. *Raymond*, 73 *Ga.* 749. If actual possession of this 'land was held by the plaintiff by a tenant, at the time the defendant purchased, if no inquiry was made, the presumption is that inquiry would have developed under what right, title, or interest the possessor held. *Parker* v. *Gortatowsky*, 127 *Ga.* 560 (2) (56 S. E. 846). So if at the time of the sheriff's sale, and at the times when those claiming under the purchaser at such sale obtained their conveyances, the wife was in possession of this land, either by herself or by tenants, such possession was notice to such purchaser and those claiming under him of whatever right or title the wife had to this land. Residence by a husband and wife upon land which the wife claims and to which the husband had procured a deed to be made to his wife is notice of whatever interest the wife has therein. *Walker* v. *Neil*, supra.

7. Applying the above rulings, the court erred in directing a verdict for the defendant.

*Judgment reversed. All the Justices concur.*

BECK, P. J., concurs in the result.

ATKINSON, J., concurs specially.